**N.A. SALES COMPANY, INC.,**
**Plaintiff-Appellee,**

v.

**CHAPMAN INDUSTRIES CORP.,**
**Defendant-Appellant.**

**No. 943, Docket 83–7229.**

United States Court of Appeals,
Second Circuit.

Argued April 16, 1984.

Decided June 6, 1984.

David Halperin, New York City (Howard Slotnick, David Halperin, P.C., New York City), for plaintiff-appellee.

Daniel P. Levitt, New York City (Joseph G. Bisceglia, Karl S. Nadler, Jenner & Block, Chicago, Ill., Donald J. Olenick, Kramer, Levin, Nessen, Kamin & Frankel, New York City), for defendant-appellant.

Before FRIENDLY, PIERCE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Chapman Industries Corp. ("Chapman") appeals from an order holding it in contempt for violating an injunction by selling its product to a major competitor of the appellee N.A. Sales Company, Inc. ("N.A.") with whom Chapman has an exclusive distributorship agreement. The district court imposed a treble damages fine, assessed costs and attorney's fees against Chapman and issued a clarifying order supplementing the permanent injunction.

We reverse the contempt finding as to the period before the entry of the permanent injunction, but we affirm for the period thereafter. We remand for a recalculation of the fine because of the partial reversal of the contempt finding and because of doubt as to the length of the relevant period for which we uphold the contempt finding. We affirm the clarifying order.

## BACKGROUND

Chapman is an Illinois corporation which manufactures and sells automobile anti-theft devices, including the patented Chapman Kar-Lok. N.A. is a New York corporation which sells automotive security devices. N.A. has been selling Chapman Kar-Loks pursuant to the terms of a twenty-year exclusive distributorship agreement ("Agreement") entered into by the parties on March 23, 1972. By the terms of that Agreement, Chapman granted N.A. the sole right to sell its merchandise in the "area encompassed in a fifty-mile radius from the Empire State Building," and agreed not to allow any other entity to sell Chapman's products within this exclusive area.

In the latter part of 1980, a dispute caused N.A. to bring this diversity action against Chapman for breach of contract. In January, 1981, Judge Mishler issued a temporary restraining order directing Chapman to comply with the terms of the Agreement, and in March of that year, he granted a preliminary injunction to the same effect. In June, 1981, Judge Mishler found Chapman in contempt for violating the temporary restraining order by selling products to firms operating within N.A.'s exclusive territory, but he reserved imposition of a penalty until trial on the merits. Despite the court orders, Chapman continued to sell merchandise to N.A.'s competitors in the exclusive area and to accept direct orders from customers of N.A.

A trial was held in December, 1981, before Judge Mishler and a jury. The jury returned a special verdict awarding N.A. damages for Chapman's breach of the Agreement by selling Chapman products to customers within N.A.'s exclusive distribution area and by delaying or failing to supply products ordered by N.A.

As part of the final judgment for N.A., Judge Mishler entered a permanent injunction on March 23, 1982 ordering Chapman to comply with the terms of the Agreement. We affirmed on appeal. *N.A. Sales Co. v. Chapman Industries*, 714 F.2d 115 (2d Cir.1982). On that date, Judge Mishler also issued a memorandum denying N.A.'s request for imposition of a penalty for Chapman's violation of the temporary restraining order, noting that N.A. had recouped its full damages in the breach of contract action. He noted, however,

> The defendant's contempt indicates a continuous course of conduct designed to deny plaintiff's rights under the [Agreement]. The court will not overlook future violations of the court's permanent injunction issued this day. The court will impose fines equal to three times the amount of damages shown to have resulted from defendant's violation of the court's injunction.

In July, 1982, N.A. moved for an order citing Chapman in civil contempt. N.A. claimed that Chapman was selling its products to J & J Corporation ("J & J"), a retailer of automotive supplies which was selling Chapman products within N.A.'s exclusive distribution area. N.A. also alleged other violations, noting that Chapman was including a warranty disclaimer with all Kar-Loks shipped to N.A. and had altered the appearance of Kar-Loks delivered to N.A. by changing the color of the wires from red to green, thus distinguishing them from Kar-Loks delivered to other Chapman distributors.

An order to show cause why Chapman should not be held in contempt for violating the March 23 order was issued on July 15, 1982. Following a hearing, Judge Mishler cited Chapman for contempt of the preliminary and permanent injunctions on February 25, 1983. He found that during the effective period of the preliminary injunction and following entry of the final judgment, Chapman had continued to sell its

products to J & J. Although Chapman ceased making direct sales to J & J on March 12, 1982, just prior to the entry of the permanent injunction, Judge Mishler found that Chapman had continued to supply J & J with Chapman products by using an Indiana corporation, Vehicle Specialties, Inc. ("VSI") as a conduit. Judge Mishler also found that Chapman's warranty disclaimers and change of wire colors were "reprehensible." However, he noted these acts were not specifically prohibited by the permanent injunction and did not, therefore, constitute contempt. In order to prevent such acts in the future, he issued a clarification which ordered Chapman to "manufacture, package and deliver its products to N.A. Sales in the same manner as it did prior to January 1, 1981 and in the same manner it generally does to all its other customers," and "[t]o accompany the product with the usual warranty and to discontinue insertion of the disclaimer cards."

Finding that Chapman had previously been warned to cease infringing upon N.A.'s exclusive territory and had received notice that treble damages would be imposed for future violations, the district judge assessed a fine of $141,000 based on his calculation of N.A.'s damages resulting from Chapman's contumacious acts as $47,-000. Judge Mishler also awarded costs and counsel fees to N.A.

## DISCUSSION

■ A district court has the inherent power to hold a party in civil contempt upon clear and convincing proof of noncompliance with a court order. *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.) (per curiam), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). In the instant case, there was ample evidence to support Judge Mishler's finding that Chapman continued to sell products to J & J in violation of the permanent injunction. Chapman's cancellation of its contract with J & J in March, 1982 was quickly followed by a new contract with VSI which included minimum buying requirements far in excess of VSI's

history of sales of Chapman's products. VSI's purchases from Chapman thereafter tripled. Even after being explicitly informed that VSI was transshipping Chapman's products to J & J, Chapman did nothing. VSI, moreover, was located near Chapman and Judge Mishler was quite entitled to find that Chapman was aware of the reasons for the sudden tripling of VSI's purchases and that VSI was merely a conduit from Chapman to J & J.

■ Chapman argues that the district court's injunction is in conflict with the antitrust laws. This argument, never proffered in earlier proceedings, challenges the validity of the injunction itself and has no place in a contempt proceeding. Chapman has had ample opportunity to litigate all issues relating to liability, including an appeal to this court, and cannot now excuse its failure to comply with the order by claiming the order is not legally warranted. *See Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948) ("a contempt proceeding does not open to reconsideration the legal or factual basis of the [disobeyed] order").

■ Chapman also argues that the treble damages penalty is punitive rather than coercive and therefore not a permissible remedy for civil contempt. We disagree. A district court has broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions. *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979). Its determination will not be disturbed absent a clear showing of abuse of discretion. *See Perfect Fit Industries v. Acme Quilting Co.*, 673 F.2d 53 (2d Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). We need determine only "whether the coercive fine [is reasonable] in relation to the facts and [is] not arbitrary." *Id.* at 57.

■ In light of Chapman's continuous and obviously willful violation of Judge

Mishler's orders, he had ample reason to conclude that only a stiff remedy would suffice to coerce compliance. Judge Mishler had been lenient in dealing with Chapman's earlier contempt but had then cautioned Chapman about the sanctions proposed for future noncompliance. Ignoring both Judge Mishler's leniency and his warnings, Chapman thereupon responded with callous indifference to its obligations under the order. Trebling N.A.'s damages was thus reasonably calculated to ensure future compliance in such circumstances.

■ However, we must reverse one portion of the contempt judgment and remand another. First, the district judge found Chapman guilty of contempt for conduct prior to March 23, 1982. While Chapman was subject to the preliminary injunction during that period, the order to show cause made no mention of the time period prior to March 23, 1982. Chapman did not, therefore, have adequate notice that it was being charged with contempt for that period and we reverse so much of the contempt order as is based on conduct occurring before March 23, 1982. We therefore remand for an appropriate recalculation of the fine.

We also remand for a clarification and, if necessary, recalculation of the fine for conduct occurring after March 23, 1982. Judge Mishler's opinion states that N.A. has proven by clear and convincing evidence that Chapman had violated the permanent injunction through July 23, 1982. However, in calculating the damages incurred by N.A., he relied upon evidence of the amount of Chapman products sold to J & J through October 25, 1982. The anomalous combination of dates for the period of contempt and for relevant sales leaves us uncertain as to the thinking of the district court, and somewhat apprehensive as to possible clerical errors in its opinion. The evidence of contumacious behavior between

July and October, 1982 appears to be quite as strong as that before July, particularly since Chapman undeniably knew of VSI's sales to J & J by then. We remand, therefore, for a clarification as to the period during which Chapman violated the order of March 23, 1982, and the period of Chapman sales to J & J relevant to that contempt. To avoid further proceedings, we state that the district judge's method of calculating N.A.'s losses passes muster as a means of coercing compliance with the March 23 order.[1] If, however, the district judge has concluded that contempt has not been proven after July 23, 1982, recalculation may be necessary.

■ The clarifying order directing Chapman to treat N.A. as it treats other distributors was a proper modification of the permanent injunction. It notified Chapman that, in addition to sales or solicitations within N.A.'s exclusive area, tactics designed to harass or otherwise to disavow the Agreement were in violation of the order. Clarifications of orders previously issued, which may be obtained on motion or made *sua sponte* by the court, add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous. *See Folsom v. Blum*, 554 F.Supp. 828, 830–31 (S.D.N.Y.1982). The order was clearly within Judge Mishler's discretion.

■ Chapman challenges the award of costs and counsel fees. Since the district judge's finding that Chapman's violation was willful is amply supported by the record, the award was proper. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d at 130–31; *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664–65 & n. 5 (2d Cir. 1970).

1. Judge Mishler determined that 60% of the Chapman products sold by J & J were within N.A.'s exclusive area of distribution. He found a gross profit of $53,900, which, when reduced by 12% for costs of distribution, resulted in an actual loss to N.A. of about $47,000. Chapman challenges the factual basis in the record for the calculation of sales within N.A.'s territory and of lost net profit. Since the issue is not one of contract damages but rather the calculation of a sum reasonably designed to lead to compliance with the orders of the court, Judge Mishler was entitled to rely on general estimates as to such matters in determining that sum.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.