Jackson A. SMITH, individually and doing business as Rand Patents, Inc., and Copperthorne Industries 86, Ltd.; and Copperthorne Industries, Inc., Appellants,

v.

CONDUX INTERNATIONAL, INC., Condux Corporation, Respondents.

No. C4–90–1492.

Court of Appeals of Minnesota.

Feb. 19, 1991.

Terence M. Fruth, Paul M. Floyd, Linda A. Newbauer, Fruth & Anthony, Minneapolis, Kenneth E. Kuffner, Arnold, White & Durkee, Houston, Tex., for appellants.

Robert J. Sheran, David A. Allgeyer, Lindquist & Vennum, and John D. Gould, John A. Clifford, Paul E. Lacey, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and NORTON and SHORT, JJ.

## OPINION

NORTON, Judge.

This is an appeal from a post-judgment temporary injunction and an order denying appellants' motion to vacate that injunction. After judgment was entered and an appeal was filed, respondents brought a show cause motion accusing appellants of contempt for violating the terms of the permanent injunction that was part of the final judgment. After a hearing, the court found that appellants had violated the permanent injunction, but rather than hold appellants in contempt, the court issued a temporary injunction. Appellants brought a motion to vacate the temporary injunction. The court denied appellants' motion to vacate. We affirm.

## FACTS

After an eleven week trial on the underlying action relating to respondents' right to sell cable-pulling equipment, the jury found that respondents did not infringe appellants' "Pulling Eye" patent and that appellants engaged in unfair competition by copying respondents' catalog and creating possible confusion in the industry. The jury returned the special verdict form on June 23, 1989.

The judgment adopted the special verdict responses as findings and was entered on November 20, 1989. The judgment included a provision permanently enjoining appellants from:

performing or committing any acts calculated or likely to cause confusion or mistake in the minds of the public, or to lead consumers or potential consumers to believe that any of the plaintiffs' products or services come from or are associated with the goods or services of the defendants, or that there is some connection between the plaintiffs and defendants, or from otherwise unfairly competing with the defendants, and from committing any other acts which constitute unfair competition.

This court affirmed the trial court judgment in the underlying action. *Smith v. Condux,* No. C9–90–791, 1990 WL 140883 (Minn.App. Oct. 2, 1990), *pet. for rev. denied* (Minn. Nov. 28, 1990).

On March 28, 1990, respondents brought a show cause motion for contempt and a TRO. The court held a hearing on April 11, 1990 and respondents presented evidence that the industry was confused as to respondents' right to sell cable-pulling equipment, that most customers were requiring hold-harmless agreements from respondents before they would agree to buy their cable-pulling equipment, that industry publications would not publish respondents' press release because they did not believe that they had won the lawsuit, that appellants still refused to acknowledge respondents' license to sell the products, and that appellants' agents were informing the industry that they were handling respondents' products and were using respondents' parts numbers. In addition to the evidence of post-judgment facts, respondents reintroduced pre-judgment evidence of August and September 1989 correspondence from appellants to customers saying that respondents were patent infringers and had no right to sell cable-pulling products. On June 12, 1990, respondents submitted a supplemental memo alleging further acts of unfair competition; specifically that one of appellants' agents had used respondents' parts numbers in a price quote.

On June 15, 1990, the court filed a TRO. In support of the TRO, the court found that appellants had violated the permanent injunction. The court based this finding on evidence that appellants' agents 1) had indicated that respondents were selling off inventory and that these actions questioned respondents' right to sell its products, and 2) used respondents' parts numbers to sell appellants' products. The court found that these actions caused confusion in the industry. Further, the court found that respondents would be irreparably harmed if the temporary injunction was not granted. The court ordered appellants to 1) publish a notice prescribed by the court in all trade journals that respondents' customers or po-

tential customers would be expected to read, 2) provide a list of all customers that might have questions about respondents' ability to sell its cable-pulling products because of appellants' conduct, 3) inform their agents and employees about the injunction and instruct them not to use any of respondents' parts numbers to sell their products, and 4) report back to the court when the corrective actions were taken. The court denied appellants' motion to vacate the TRO on June 25, 1990.

In addition to the matters on appeal, appellants brought a motion before this court to strike parts of respondents' brief, and respondents brought a motion to expand the record.

## ISSUE

Did the trial court abuse its discretion by ordering the post-judgment temporary injunction?

## ANALYSIS

The granting of an injunction generally rests within the sound discretion of the trial court, and its action will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion. *Cherne Indus. v. Grounds & Associates,* 278 N.W.2d 81, 91 (Minn.1979).

A. Did the trial court's TRO fail to meet procedural requirements?

Minnesota Rule of Civil Procedure 52.01 requires a trial court to make specific factual findings in all actions tried without a jury, including "granting interlocutory injunctions." Here, the court found 1) that appellants violated the permanent injunction against unfair competition and 2) that respondents would be irreparably harmed without further relief. The requirement of factual findings is to enable an appellate court to adequately review a court's action. *Wakefield v. Anchor Bancorp,* 416 N.W.2d 814, 818 (Minn.App.1987) (citing Minn.R. Civ.P. 52.01, Advisory Committee Comments).

Appellants argue that the court's findings fail to sufficiently address the factors from *Dahlberg Bros. v. Ford Motor Co.,* 272 Minn. 264, 137 N.W.2d 314 (1965) that a trial court must consider before issuing a temporary injunction. Those factors are:

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Id.* at 274–75, 137 N.W.2d at 321–22 (footnotes omitted).

Here, the factors necessary for injunctive relief from *Dahlberg* were already incorporated into the permanent injunction that was part of the final judgment. The permanent injunction was issued after four years of litigation and an eleven-week trial. The court is not making a new determination that injunctive relief is required; it is merely trying to enforce the relief already granted. The same concerns addressed by *Dahlberg* are not presented where a court is merely attempting to enforce a judgment. Therefore, the court was not required to specifically address each of the *Dahlberg* factors in its post-judgment temporary injunction. *Cf. David N. Volkmann Constr. v. Isaacs,* 428 N.W.2d 875, 877 (Minn.App.1988) (trial court retains jurisdiction to enforce judgment pending appeal); *N.A. Sales Co. v. Chapman Indus.,* 736 F.2d 854, 858 (2d Cir.1984) (post-judgment injunction clarifying acts prohibited by permanent injunction is proper alternative to contempt order).

■ B. Were the court's findings supported by the evidence?

■ When reviewing a temporary injunction, the facts must be viewed in the light most favorable to the party who prevailed below. *Wakefield*, 416 N.W.2d at 818.

Here, the court received evidence that appellants' agents caused confusion in the industry by 1) indicating that respondents were selling off inventory and 2) using respondents' parts numbers to sell appellants' products. Appellants argue that the court's factual findings were based on rumors that could not be traced to appellants' actions. Although the court heard conflicting evidence, the facts, when viewed in the light most favorable to respondents, support the court's findings.

■ In addition, appellants argue that the court could not rely on actions that occurred before the permanent injunction to find that the injunction was violated. However, the court explained that appellants' pre-judgment acts of mailing misinformation contributed to a climate in the industry where further rumors led to further confusion. This further confusion required a more complete remedy after previous remedies had not corrected the situation.

The court's findings were supported by the evidence.

■ C. Did the trial court err by issuing an injunction that was overbroad and indefinite?

A trial court has authority to draft an injunction so that it provides an adequate remedy without imposing unnecessary hardship on the enjoined party.

*Cherne*, 278 N.W.2d at 93 n. 6.

Appellants first argue that the TRO cannot be used to enforce the permanent injunction because portions of the permanent injunction are too broad and indefinite to be enforceable. This argument fails because appellants are prohibited from attacking the permanent injunction that was part of a judgment that has been appealed and affirmed.

■ Next, appellants address their indefinite and overbroad argument to the content of the temporary injunction, alleging that the customer list requirement is overbroad because it may include customers that are not also respondents' customers. However, in response to an argument that an injunction was not clearly tailored to remedy only injuries sustained from wrongfully taken customer lists, the supreme court said:

> [T]he trial court * * * might reasonably have found that defendants * * * had wrongfully used this information * * * and, in order to provide an adequate remedy to plaintiff and to prevent defendants from profiting unjustly from their misconduct, [a broader] injunction * * * was necessary.

*Id.* Here also, although the customer list the court required was not as narrow as the enjoined party would like, the court could require a list of all those customers that appellants had misled in order to prevent appellants from profiting from their misconduct.

■ D. Does the injunction's publication requirement violate appellants' constitutional right to free speech?

■ The first amendment applies only to state action and protected speech. Where a court is only enforcing the right of a private party, that is not clearly state action. *Cherne*, 278 N.W.2d at 94 n. 10 (citing *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) and *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972)). Further, false or misleading advertisement is not protected speech. *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977).

Here, the court found that appellants misled and caused confusion within the industry. These misleading statements were not protected speech. Further, the publication requirements were merely enforcing respondents' private right to be free from unfair competition. The TRO did not violate appellants' first amendment rights.

Finally, we order that respondents' statement of the case be stricken because it is

not a fair recitation of the facts. Minn.R. Civ.App.P. 128.02, subd. 1(c). Further, we decline to supplement the record to include post-appeal matters and order those portions of respondents' brief that refer to post-appeal matters also be stricken. Minn.R.Civ.App.P. 110.01.

## DECISION

The trial court did not abuse its discretion by ordering further injunctive relief when it found appellants had violated the permanent injunction.

Affirmed.