In re STOCKBRIDGE FUNDING CORP., Debtor.

STOCKSCHLAEDER & McDONALD, ESQS., Paul F. Stockschlaeder, Mary K. Stockschlaeder, Gilbert Spitzer and Jerome Spitzer, Plaintiffs,

v.

David R. KITTAY, in his capacity as Trustee for the Estate of Debtor, and Irwin Birnbaum, Defendants.

No. 93 Civ. 0287 (JES).

United States District Court, S.D. New York.

Sept. 24, 1993.

Sherman Citron & Karasik, P.C., New York City (Howard Karasik, of counsel), for appellant.

David R. Kittay, P.C., White Plains, NY (David R. Kittay, of counsel), for appellee.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Appellant law firm Stockschlaeder & McDonald appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Conrad, B.J.) dated October 22, 1992, which, after a hearing, determined appellant to be guilty of civil contempt, imposed sanctions based thereon

and found that appellant violated the bankruptcy's automatic stay under 11 U.S.C. § 362. For the reasons that follow, the order appealed from is affirmed in part and vacated in part.

## BACKGROUND

Except where otherwise indicated, the relevant facts have been taken from the documentary evidence introduced and the various transcripts of proceedings taken in this case.[1]

Prior to being placed in bankruptcy, Stockbridge Funding Corp. ("Stockbridge" or "debtor") had been engaged in the business of selling mortgages to institutional investors. *See In re Stockbridge Funding Corp., supra,* 145 B.R. at 800. At some point, certain Stockbridge employees devised a scheme whereby Stockbridge guaranteed returns to individual investors and, to secure their investments, promised to assign and record mortgages to secure their investments. *Id.* However, those investments were not, as promised, risk-free nor, as was most often the case, were the assigned mortgages recorded. *Id.* at 800–01. Many of these individual investors lost most or all of their investments, *id.* at 800, and a criminal investigation into Stockbridge's practices was eventually begun. *Id.* at 801, n. 5.

On January 4, 1991, creditors of Stockbridge filed an involuntary petition against it under Chapter 7 of the Bankruptcy Code which was later converted to a proceeding under Chapter 11. *Id.* at 800. On January 28, 1991, David R. Kittay was appointed interim trustee of debtor's estate ("Trustee" or "appellee"). *See* D–11, annexed Application in Support of Order to Show Cause, ¶ 3.

On February 1, 1991, the Trustee brought before the bankruptcy court, and the bankruptcy court signed, an order to show cause why debtor's former attorneys, the law firm of Stockschlaeder & Mc-

---

1. The bankruptcy court's version of the facts can be found in its Amended Memorandum of Decision of Motion for Contempt and Violation of Stay dated October 8, 1992. *See In re Stockbridge Funding Corp.,* 145 B.R. 797 (Bankr. S.D.N.Y.1992). For purposes of this appeal, references to items taken from the Designation of Items to be Included in the Record on Appeal dated November 12, 1992, shall be cited as "D-[number of item]."

Donald ("appellant"), should not turn over documents in the firm's possession relating to the debtor's business. That February 1 order to show cause scheduled a hearing before the bankruptcy court on March 1, 1991 for "the debtor and all parties in interest" to show cause "why an order should not be entered ...; (2) compelling turnover to the Trustee of notes, mortgages, loan files and other records and property of the estate currently believed to be in the possession of attorneys who represented the debtor ...," *see* D–11 at 1, and further required, in the interim period before the March 1 hearing, that debtor's "present and former attorneys ... grant the trustee and his agents access to all documents and files related to the business of the debtor...." D–11 at 3. Notably, appellant's February 22, 1991, response to the Order to Show Cause freely acknowledges that the Trustee's motion sought turnover of the relevant files. *See* D–13, ¶¶ 5–7.

On March 1, 1991, the bankruptcy court held a hearing on that turnover motion, during which Judge Conrad repeatedly directed that appellant turn over the requested files, citing to the Trustee's absolute statutory duty to collect all debtor's records and files. D–14 at 43–46. Judge Conrad further required appellant to "turn the files over no later than Monday [March 4, 1991,] at 6:00 [p.m.] or I will have you before me to hold in contempt[,]" *id.* at 44, and warned that if appellant did not do so he "[would] hold [appellant] in contempt" for "$10,000 a day." *Id.* at 45. Appel-

lant's counsel acknowledged that he understood Judge Conrad's order. *Id.*[2]

By March 4, appellant had turned over only so-called "litigation/foreclosure" files, even though appellant's aforementioned response to the Order to Show Cause makes it clear that appellant understood that the Trustee's turnover motion sought turnover of all files. *See* D–13, ¶ 5. On March 7, 1991, the bankruptcy court issued a written follow-up order to the March 1 hearing which ordered that "all debtor's present and former attorneys ... shall grant the trustee and his agents access to all documents and files related to the business of the debtor." D–15 at 2. Appellant's counsel subsequently testified at the contempt hearing that he did not understand the "grant access" language of the March 7 written order to change the oral order given at the hearing to turn over the files. *See* Appellee's Brief at 11.

On June 18, 1991, appellants commenced an adversary proceeding against the Trustee by filing a petition for a declaratory judgment concerning the validity, extent and priority of liens on real property, and concerning whether certain mortgages constituted estate property under 11 U.S.C. § 541(d). The Trustee filed counterclaims for civil contempt and for compensatory and punitive damages under section 362(h) of the Bankruptcy Code for violating the automatic stay.[3]

In October, 1991, the Trustee learned that particular files containing Stockbridge's business records had not been turned over. By letter dated October 21,

---

**2.** That portion of the transcript clearly illustrates the thrust of Judge Conrad's order to turn over the files. It reads:

THE COURT: Talk to him again, but turn the files over by Monday [March 4, 1991].

You have no right not to turn over the files, you cannot refuse to turn them over.

The case law is absolutely clear, if you don't turn them over, I will hold you in contempt, in fact I will tell you what the contempt will be, $10,000 a day.

Do you understand?

MR. [SULES]: Yes, I do.

*Id.*

**3.** The counterclaim for violation of the automatic stay alleges that appellant, after the bankrupt-

cy petition had been filed and in its position as escrow agent and attorneys to both debtor and fellow plaintiffs in the adversary proceeding, Gilbert and Jerome Spitzer, improperly released mortgage assignments subject to the escrow agreement and also recorded mortgage assignments in order to give an advantage to the Spitzers's claims in the bankruptcy. *See In re Stockbridge Funding Corp., supra,* 145 B.R. at 802. The mortgage assignments had been placed in escrow to secure a credit line extended from the Spitzers to Stockbridge, and were to be released once "a mortgage loan is purchased by the Institutional investor which committed to purchase the said Mortgage Loan." *Id.* at 801–02.

1991, appellant explained that the firm had held those files in anticipation that the Trustee would come to inspect them. *See* D–19. Nevertheless, on February 25, 1992, while inspecting files at appellant's office pursuant to discovery then being conducted in the adversary proceeding, the Trustee came across numerous previously unseen customer loan files which were within the scope of the bankruptcy court's earlier orders. *See* D–25. Moreover, more documents to which the Trustee should at least have had access were seen for the first time when they were appended to appellant's papers in support of their motion for summary judgment in the adversary proceeding. *See* D–24. As a consequence of that revelation, the Trustee requested all documents which had not yet been turned over. *See* D–25. On March 11, 1992, appellant sent the Trustee a list of documents not yet turned over in response to his request, including the files found on February 25. *See* D–26. However, other applicable documents not on that list were not turned over until April 14, 1992. *See In re Stockbridge Funding Corp., supra,* 145 B.R. at 806; D–27, 28.[4]

After hearings on May 1, 1992, and June 12, 1992, the bankruptcy court entered an order on October 22, 1992, finding appellants guilty of civil contempt and of having violated the automatic stay, and directing the clerk to enter judgment in favor of the Trustee in the amount of $4,070,000 representing $10,000 per day for 407 days, *i.e.,*

the number of days from March 4, 1991, the date of the bankruptcy court's oral order to turn over the files, to April 14, 1992, the date compliance was achieved. The bankruptcy court set a damages hearing in the future to determine appellee's counterclaim for compensatory and punitive damages. *See In re Chateaugay Corp.,* 920 F.2d 183, 186–87 (2d Cir.1990).

## DISCUSSION

■ As an initial matter, the Court concludes that, tested by either a clearly erroneous standard or a *de novo* standard of review, *see* Bankruptcy Rules 8013, 9033(d), the bankruptcy court's finding of contempt against appellants is supported by clear and convincing evidence and should be affirmed.[5] A court may hold a party in civil contempt for failure to comply with an order where (1) the order is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent in attempting to accomplish what was ordered. *See, e.g., EEOC v. Local 580,* 925 F.2d 588, 594 (2d Cir.1991). In the instant case, the bankruptcy court clearly and unambiguously directed that appellant turn over the files requested in the Trustee's motion, and based its finding that appellant did not comply on overwhelming evidence. Moreover, appellant's lack of diligence in its effort to comply is clearly apparent from the record in this case which vividly chroni-

4. Although appellee also alleges that other documents which fit within the scope of the bankruptcy court's orders were not turned over until December 21, 1992, almost two months after the bankruptcy court's finding of contempt, *see* Appellee's Brief at 16, n. 12, appellee has provided no evidentiary support for that allegation.

5. There is some confusion in the language of the Bankruptcy Rules about which standard of review applies in such a matter. Appellant urges that Bankruptcy Rule 9020(c) requires the Court to apply a *de novo* standard of review. Although that rule leaves the district court in the position of having to determine *de novo* the adequacy of the bankruptcy court's factual findings from a cold record without the benefit of having observed the demeanor of the witnesses or having evaluated their credibility, the language of Rule 9020(c) mandates that where, as here, a timely objection to a bankruptcy court's

contempt order is filed, the standard of review is *de novo* pursuant to Bankruptcy Rule 9033. *See* Bankruptcy Rule 9020(c). Appellee argues, however, that the Court should apply a clearly erroneous standard pursuant to Bankruptcy Rule 8013 because Rule 9033 by its terms is only applicable to non-core proceedings. *See* Bankruptcy Rule 9033 which provides "Review of Proposed Findings of Fact and Conclusions of Law in *Non–Core* Proceedings" (emphasis added). The instant case appears to be a core proceeding, *see* 28 U.S.C. § 157(b)(2)(K), and has been determined to be so by Judge Conrad. *See In re Stockbridge Funding Corp., supra,* 145 B.R. at 800, n. 1, 804. However, the Court need not resolve this apparent conflict because, as noted above, under either standard of review, the Court finds that the bankruptcy court's finding of civil contempt was correct.

cles appellant's violations of both the letter and the spirit of the bankruptcy court's orders.[6]

■ However, there is a serious legal issue with respect to the civil contempt sanctions imposed in this case. Civil contempt sanctions may be fashioned to coerce compliance or to compensate a complainant for his actual losses, and are to be distinguished from criminal contempt sanctions which are intended to punish a contemnor or to vindicate a court's authority.[7] *See United States v. United Mine Workers of Am.,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–01, 91 L.Ed. 884 (1947); *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). The parties have not proffered and the bankruptcy court in its opinion has not referred to any evidence that the sanction at issue is or was designed to compensate the Trustee for his actual losses. Therefore, the principal issue raised by this appeal is whether the bankruptcy court, after finding appellant guilty of civil contempt, could properly impose a coercive sanction after there had been full compliance with its orders.

■ Contrary to appellee's argument, after a contemnor has complied in full with a court's orders, a court cannot impose a fine conditioned on future compliance since there is no future compliance to be coerced.

Coercive sanctions afford a contemnor an opportunity to purge his contempt, and end as soon as that contemnor "ceases his contumacious behavior." *Ochoa v. United States,* 819 F.2d 366, 369 (2d Cir.1987). In the instant case, the sanction imposed had no coercive function since appellant had fully complied with the relevant judicial directions by the time a contempt finding was issued. *See Penfield Co. of Cal. v. Securities & Exchange Comm'n,* 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947) (citing *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902)). *Cf. Shillitani v. United States,* 384 U.S. 364, 370–72, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966).

Although courts have broad discretion to fix fines to coerce compliance, *see United States v. United Mine Workers of Am., supra,* 330 U.S. at 304, 67 S.Ct. at 701, appellee has provided no case law to support the validity of the bankruptcy court's *ex post facto* imposition of a civil contempt sanction not designed to insure future as well as past compliance.[8]

■ Nor can any serious argument be made that the bankruptcy court's March 1 oral order in itself constituted an adjudication of contempt. Due process requires, at a minimum, notice of the allegations and a hearing. *See United States v. City of Yonkers,* 856 F.2d 444, 452 (2d Cir.1988), *rev'd on other grounds,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990); *accord*

---

6. In view of the clarity of the bankruptcy court's ruling at the March 1 argument on the Trustee's motion, the Court rejects appellant's argument that that ruling was ambiguous. Appellant argues that discrepancies in the March 1 oral order and the March 7 written order left them without a clear understanding as to what was required of them. Its argument that the written order merely required that they "grant access" to, not "turn over," the documents, and that the oral order only required turnover of litigation/foreclosure files is hardly persuasive in view of appellant's testimony at the contempt hearing that he did not understand the "grant access" language of the written order to have modified the oral order.

7. Accordingly, the burdens of proof differ for civil and criminal contempt. Compare *EEOC v. Local 580, supra,* 925 F.2d at 594 (proof by clear and convincing evidence for civil contempt),

with *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 659 (2d Cir.1989) (proof beyond a reasonable doubt for criminal contempt), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990).

8. *N.A. Sales Co. v. Chapman Indus. Corp.,* 736 F.2d 854 (2d Cir.1984), which was cited to the Court by appellee at oral argument, is factually and legally inapposite. There, the district court had found defendant in contempt of a temporary restraining order and later issued a permanent injunction, finding that that "contempt indicates a continuing course of conduct" and warning that it "will impose fines equal to three times the amount of damages shown to have resulted from defendant's violation" of the permanent injunction. Therefore, unlike the instant case, in *N.A. Sales,* the Court fashioned its sanction at least, in part "to ensure future compliance." *Id.* at 858.

*Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 934–35 (2d Cir.1992). Indeed, the Trustee's motion did not even seek a finding of civil contempt, but rather sought only to compel appellant to turn over certain files. Moreover, the bankruptcy court's statement at the March 1 argument that it *would* hold appellant in civil contempt for future noncompliance is on its face inconsistent with any rational conclusion that appellant had already been found guilty of a civil contempt.

It follows that the bankruptcy court's sanction resembles in both form and substance a sanction for criminal contempt. Sanctions which accrue daily until compliance are generally civil, while fixed penalties are usually criminal, *see In re Three Grand Jury Subpoenas Dated Jan. 5, 1988,* 847 F.2d 1024, 1028 (2d Cir.1988), and, unlike civil contempt, cannot be purged. *See Ochoa v. United States, supra,* 819 F.2d at 369. Since the characterization of a contempt is determined more by the purpose and character of the sanction than by the characterization given by the court below, *Shillitani v. United States, supra,* 384 U.S. at 368, 86 S.Ct. at 1534; *In re Kave,* 760 F.2d 343, 351 (1st Cir.1985), the Court concludes that this fixed fine, which is based on a contempt which appellant cannot purge, is in essence a criminal contempt sanction. *See Ochoa v. United States, supra,* 819 F.2d at 369; *Martin v. Guillot,* 875 F.2d 839, 845 (11th Cir.1989).[9]

## CONCLUSION

Since that sanction for what was, in effect, a criminal contempt was made without adequate notice and was not based upon a finding of criminal contempt established beyond a reasonable doubt, it must be vacated. For the reasons stated above, the bankruptcy court's finding that appellant violated the automatic stay is affirmed. Accordingly, the order appealed from is affirmed in part and vacated in part.

It is **SO ORDERED.**

---

9. It is also clear upon review *de novo* that the bankruptcy court's conclusion that appellant violated the automatic stay was correct. *See* Bankruptcy Rule 8013. Neither side has ever addressed that issue on Oral Argument nor have the parties presented any reason to disturb the bankruptcy court's factual findings. *Id.* Indeed, to the contrary, appellant concedes that, post-petition, it released from escrow and recorded several mortgage assignments that secured the warehousing loan of its other clients, the Spitzers.

Appellant argues that it did not violate the automatic stay since it had already perfected the escrowed mortgage assignments pre-petition when appellant filed UCC–1 financing statements in August, 1990, and, therefore, its post-petition recording did not improve its legal position. That argument is not persuasive. Since the issue as to whether their interest was perfected in the absence of having recorded it was at least unsettled, *see Landmark Land Co. v. Sprague,* 529 F.Supp. 971, 976–77 (S.D.N.Y.1981) (applying Uniform Commercial Code Article 9 to collateral assignments of note and real property securing that note), *rev'd on other grounds,* 701 F.2d 1065 (2d Cir.1983); *Federal Deposit Ins. Corp. v. Forte,* 94 A.D.2d 59, 463 N.Y.S.2d 844 (2d Dep't 1983), that conduct was designed to enhance and strengthen their position as a claimant and certainly to improve its legal arguments with respect thereto. In any event, the conduct clearly constituted post-petition conduct which violated the automatic stay.

Appellant relies on *In re O.P.M. Leasing Services, Inc.,* 46 B.R. 661 (Bankr.S.D.N.Y.1985), for its argument that its release of debtor's mortgage assignments from escrow was proper. *O.P.M.* is inapposite, however, since that case holds only that that improper release of assets from escrow was not a transfer subject to an avoidable preference which could be set aside pursuant to the bankruptcy court's "strong arm" powers under section 544 of the Bankruptcy Code, not that it did not violate the automatic stay. Under section 541(a)(1) of the Bankruptcy Code, property of the estate is defined to include all of a debtor's legal interests in property. Under New York law, the debtor's legal right to escrowed property remained until occurrence of the condition permitting its release from escrow. *Id.* at 667. The bankruptcy court therefore correctly concluded that the release from escrow prior to the triggering condition, *i.e.,* a commitment from an institutional investor to purchase mortgage loans secured by the escrowed assignments, *see supra* p. 916, n. 3, violated the automatic stay.