**In re Nitor V. EGBARIN, Janet J. Egbarin, Debtors.**

**Nitor V. Egbarin, Movant,**

**v.**

**Connecticut Diagnostics, LLC, Robert Schwer, Respondents.**

**No. 00–23132.**

United States Bankruptcy Court, D. Connecticut.

Nov. 13, 2002.

Nitor V. Egbarin, Hartford, CT, Movant–Debtor, Pro Se.

Patrick L. Kennedy, South Windsor, CT, Counsel for Respondents.

### RULING ON MOTION FOR CONTEMPT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

The matter before the court is a motion ("the motion") filed by Nitor V. Egbarin ("Egbarin"), one of the debtors in this Chapter 7 case, requesting that Connecticut Diagnostics, LLC ("Connecticut Diagnostics") and Robert Schwer ("Schwer")[1] (together, "the respondents") be found "in civil and criminal contempt" and "that this court certify to the district court its finding of criminal contempt for the imposition of incarceration upon Robert [Schwer]." (Mot. 1–2.) The motion alleges that the basis for such an order is the respondents' activities in collecting "their debt" following the issuance of a discharge to the debtor. (Mot. at 2.) A hearing on the motion concluded on September 17, 2002, following which the parties[2] submitted their memoranda of law. Although the hearing held was brief, the documents admitted into evidence and the case file portray a somewhat tangled background.

I.

Egbarin, together with his spouse, on November 27, 2000, filed a joint Chapter 7 petition. Prepetition, in 1999, a Statewide Grievance Committee ("the Committee") had concluded that Egbarin, an attorney, was responsible for "conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(3) of the Rules of Professional Conduct." (Respondents' Ex. D.) The Committee ordered that Egbarin be presented to the Connecticut Superior Court. Egbarin testified that he was subsequently suspended from the practice of law for five years. Schwer, a chiropractor who had provided medical services to a number of Egbarin's clients for personal injuries, was the complainant before the Committee. The Committee concluded "by clear and convincing evidence" that Egbarin, after providing "letters of protection" to Schwer indicating that his medical bills would be paid out of settlement proceeds received from his clients' tort claims, failed to notify Schwer when settlements were made and failed to pay such bills. (Respondents' Ex. D.)

When Egbarin subsequently filed his bankruptcy petition, he did not include either of the respondents as creditors in his schedules, and they received no notice of the filing. The court, on December 8, 2000, on Egbarin's motion, converted his Chapter 7 case to one under Chapter 13. Egbarin, on January 5, 2001, moved to reconvert his case to Chapter 7, and the court did so on February 13, 2001. Thereafter, the court established May 21, 2001 as the bar date for filing objections to discharge and complaints to determine dischargeability of certain kinds of debts. No

---

1. Schwer, apparently, is a member of Connecticut Diagnostics, LLC.

2. Although Egbarin in his bankruptcy case has been continuously represented by counsel, he filed the instant motion *"pro se."*

objections to discharge being received, the court, on June 5, 2001, granted Egbarin a discharge from debt. Egbarin, on June 21, 2001, filed and served upon Connecticut Diagnostics an amendment to his creditor schedules to add the name of Connecticut Diagnostics.

Connecticut Diagnostics, through its counsel, on March 30, 2001 and April 2, 2001, had brought two actions in the Small Claims Area at Manchester of the Connecticut Superior Court ("Small Claims Area") for unpaid medical bills against both the named patient and Egbarin. Egbarin responded by filing with the Small Claims Area a notice of his bankruptcy filing. The Small Claims Area, on or about May 3, 2001, sent the following notice to the named parties: "On 05/01/2001 a Motion to mark file 'off' due to bankruptcy was granted by Magistrate Katz." (Egbarin's Ex. 2 & 3.)

Connecticut Diagnostics, in July 2001 and from January 2002 through June 2002, sent statements of account to Egbarin showing the amounts due from one named patient. None of these statements specifically made demand upon Egbarin for payment.

On December 10, 2001, Connecticut Diagnostics, through counsel, started an action in the Small Claims Area against a named patient and Egbarin, claiming $2,051 due for medical services to the patient. Egbarin sent a letter, dated March 3, 2002, to the respondents advising of his bankruptcy discharge and stating: "If you refuse to withdraw this action in the next 10 days of this letter, I will promptly commence criminal and civil contempt actions against you and your firm in the U.S. Bankruptcy court in Hartford." (Egbarin's Ex. 5.) Counsel for Connecticut Diagnostics shortly thereafter withdrew this action.

On April 26, 2002, Connecticut Diagnostics brought a nondischargeability complaint against Egbarin in the bankruptcy court, based upon Bankruptcy Code § 523(a)(3)(B) (stating that certain debts are not dischargeable if the creditor was not given timely notice of the dischargeability bar date). Egbarin filed his motion on July 23, 2002. In the motion, Egbarin claims no damages, and no evidence of damages was proffered at the hearing on the motion.

## II.

■ Bankruptcy Code § 524(a)(2) provides that a discharge operates as an injunction against the commencement of an action to collect prepetition debts that have been discharged. It is undisputed that violations of this discharge injunction may constitute a contempt of court.

Although there have been numerous rule and statutory versions in the past detailing the contempt powers of the bankruptcy court, at the present time, Fed. R. Bankr.P. 9020, entitled "Contempt Proceedings," simply provides: "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." Rule 9014 deals with the relevant rules that apply to any contested matter. "[T]he more detailed treatment of contempt was promulgated at a time when there were doubts as to whether bankruptcy judges were empowered to punish for contempt. Now that that issue has been resolved in favor of the existence of the contempt power, a more traditional approach to treatment of contempt is possible." 10 *Collier On Bankruptcy* ¶ 9020.02[1] (15th Ed. Rev.2002).

■ "Civil contempt sanctions may be fashioned to coerce compliance or to compensate a complainant for his actual losses, and are to be distinguished from criminal contempt sanctions which are intended to

punish a contemnor or to vindicate a court's authority." *Stockschlaeder & Mc-Donald v. Kittay (In re Stockbridge Funding Corp.)*, 158 B.R. 914, 918 (S.D.N.Y. 1993). A court may hold a party in civil contempt for failure to comply with an order where (1) the order is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent in attempting to accomplish what was ordered. *See* *EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir.1991). Additionally, in the case of a civil contempt, proof of the violation must be clear and convincing, and in a criminal contempt matter, the party must be proven guilty beyond a reasonable doubt. *See* 11A Wright, Miller & Kane, *Federal Practice and Procedure* Civ.2d § 2960 (2d ed.1995).

### III.

In light of the facts set forth in Section II, the court concludes that at some point in May 2001, the attorney for Connecticut Diagnostics at least became aware, or should have become aware, that Egbarin had filed a bankruptcy case despite Egbarin's failure to schedule the respondents as creditors. This conclusion is based upon the testimony establishing that the Small Claims Area had, on or about May 3, 2001, sent a notice to the attorney stating that the two actions commenced by the attorney had been marked off "due to bankruptcy." Egbarin was the only common defendant in the two actions.

■ The attorney filed another collection action against Egbarin and a patient on December 10, 2001. There is nothing in the record to indicate whether such action was knowing, inadvertent or otherwise.[3] However, when Egbarin sent the

respondents the March 3, 2002 letter requesting withdrawal of the action and enclosing a copy of his discharge, the attorney promptly complied and withdrew the action. Accordingly, under civil contempt doctrine, there is neither a failure of compliance by the respondents nor a claim of any damages sustained by Egbarin, and, thus, no sanctions need be fashioned to coerce compliance or to compensate Egbarin for losses.

The record obviously does not justify the court making a finding of criminal contempt either to impose punishment and order Schwer's incarceration, or to certify such a finding to the district court. *Cf. United States v. Guariglia*, 962 F.2d 160, 163 (2d Cir.1992) (concluding that the issue of whether a bankruptcy court has the authority to impose criminal contempt is unresolved in the Second Circuit). The court finds that Egbarin's request for an order of criminal contempt based upon the record that he established to be frivolous and can only be accounted for as a reaction against a party who may have been involved in Egbarin's suspension from the practice of law.

Egbarin's motion for an order of contempt is denied in its entirety. It is

SO ORDERED.

---

**3.** Egbarin and a court employee of the Small Claims Area were the only two relevant witnesses who testified at the hearing.