**In re PT SPECIALISTS PLLC, Debtor.**

**Kentucky Orthopedic Rehab Team, P.S.C., Plaintiff,**

v.

**PT Specialists PLLC a/k/a Physical Therapy Specialists, P.S.C. and Malton Schexneider, Defendants.**

**Bankruptcy No. 02–39142.**
**Adversary No. 03–03001.**

United States Bankruptcy Court,
W.D. Kentucky.

July 27, 2005.

Melissa Marie Bauer, Louisville, KY, for Debtor.

Richard M. Rubenstein, Morris, Garlove, Waterman & Johnson, PLL, Louisville, KY, for Trustee.

### MEMORANDUM–OPINION

JOAN LLOYD COOPER, Bankruptcy Judge.

This matter came before the Court for trial on the Motion to Enforce Injunction entered by the Court on February 4, 2003 of Plaintiff Kentucky Orthopedic Rehab Team, P.S.C. ("KORT") against Defendants/Debtor PT Specialists PLLC a/k/a Physical Therapy Specialists, P.S.C. ("PTS" or "Debtor") and Malton Schexneider ("Schexneider"). The Court having considered the testimony of the witnesses at trial, the submissions of the parties and the arguments of counsel, finds in favor of KORT on its Motion to Enforce this Court's Order of February 4, 2003. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr.P. 7052.

### FINDINGS OF FACT

On February 4, 2003, this Court entered an injunction in favor of KORT on its Verified Complaint restraining Defendants, their employees or agents from any future use or dissemination of KORT's Policy and Procedures Manual and other KORT property for a period of five (5) years. For further background on the dispute resulting in the injunction, see the

Court's Findings of Fact and Conclusions of Law entered February 4, 2003.

On December 15, 2004, KORT filed its Motion to Reopen this adversary proceeding. In the Motion, KORT alleged that Defendants had violated the 2003 injunction and asserted a claim for monetary and injunctive relief. KORT specifically alleged that Debtor, Schexneider and their agents and employees instructed third parties to use KORT's Policy and Procedures Manual to obtain credentialing with health insurance companies and that they failed to return the Manual to KORT in violation of the injunction.

In December of 2004, Lawrence Benz, the CEO of KORT, received a telephone call from an individual involved in medical services who reported to him that Schexneider and PTS were using KORT's materials. This individual, Anthony Conti, later obtained a copy of the documents and gave them to Benz. The documents were identified as KORT's Policy and Procedures Manual.

Benz contacted Schexneider and warned him not to continue his use of the Manual. Schexneider responded that it was a work-in-progress. Benz asked if he could come to PTS and evaluate the Manual. Schexneider agreed to this request.

In January of 2005, Kim Maddox and Jason Chambers of KORT reviewed the documents that PTS claimed constituted its written Policy and Procedures Manual. They also interviewed PTS employee, Kristen Williams. Williams indicated that KORT's Policy and Procedures Manual was still on PTS' server and that PTS was continuing to use it. After this meeting, Benz was certain that Defendants were using KORT's Policy and Procedures Manual in violation of the injunction.

Dana DeYoung, an employee of a company called Physician Practice Administration of Kentucky, Inc. ("PPAK") had been hired by PTS to do billing and credentialing for PTS in 2002. PPAK helps medical practices with tasks such as collection, precertification of benefits and billing. In order to get the medical practice credentialed with a particular insurance company, DeYoung provided specifically requested information from the medical practice to the insurance company. This information included such things as copies of the medical malpractice policy declarations page, copies of licenses, and certain policies and procedures from the practice's policies and procedures manual. In her initial discussions with PTS, she was asked to assist with credentialing. In order to perform these tasks she was given a PTS Policy and Procedures Manual. She identified the document as Exhibit 1. She last used the manual in PTS' business in January and February 2003. No one with PTS asked her to return the manual. She gave the manual to Anthony Conti who returned it to Lawrence Bentz sometime in the fall of 2004.

In June of 2003, DeYoung was asked by Schexneider and Arnold Steyn to help with credentialing for a company called Spine Rehab Center.[1] Steyn and Schexneider told her to use the same manual she had used for PTS. DeYoung identified portions of the KORT manual that she used in credentialing Spine Rehab Center.

Kim Maddox is the Vice President of Marketing for KORT. She helped put portions of the KORT manual together and helped customized it for each client. Maddox testified that she was one of the indi-

---

1. Spine Rehab Center is a company owned one-third by Schexneider, one-third by Anthony Conti and one-third by DeYoung's husband, Eric DeYoung. Eric DeYoung is currently in litigation with Schexneider regarding ownership of that company.

viduals who met with Schexneider and Williams to review the Policy and Procedures Manual that PTS was using in January of 2005. Williams told her that the KORT manual was still on their server and that they had continued to use the manual. The manual PTS was using contained much of the same information that KORT had used and that PTS was required to return to KORT pursuant to the injunction entered February 4, 2003.

Steyn, the controller for PTS was asked by Schexneider to prepare a new manual for PTS. He acknowledged that he used the index of the KORT manual as an outline for what they needed for PTS' manual. Following entry of the 2003 injunction, Steyn was charged with gathering and returning all KORT materials to KORT. He was unaware that the KORT manual was on PTS' server. Steyn disputed DeYoung's testimony that he gave DeYoung a copy of the KORT manual for credentialing purposes.

Williams, an employee of PTS, testified that in the spring of 2003 she was asked by Schexneider and Arnold Steyn to prepare a new policy and procedures manual for PTS. Steyn worked on the manual first and then gave it to her. She testified that she prepared parts of the manual by using the KORT manual that was still on PTS' server. She incorporated parts from the KORT manual, changed headings, deleted and added parts. She completed the manual in May or June of 2003. She acknowledged that parts of the 2003 PTS manual are identical to KORT's manual because she cut and pasted portions of the manual from the one on the PTS server. When she subsequently learned that use of the KORT manual violated a Court injunction, she prepared a third policy and procedurals manual in February of 2005 without using the KORT manual.

Schexneider acknowledged that the copy of the KORT manual on PTS' server should have been destroyed in order to comply with the injunction. Schexneider also acknowledged that PTS did not create a new policy and procedures manual from scratch. It was his understanding that parts of the KORT manual were used by Williams in creating the PTS manual.

### CONCLUSIONS OF LAW

The record is clear that Defendants violated the Court's February 2003 injunction by failing to remove the KORT manual from its server. This violation was further compounded when Defendants' employees used parts of the KORT manual to put together a new PTS policy and procedures manual. The issue before the Court is whether sanctions should be awarded for these violations.

■ The Court begins its analysis with Section 105 of Title 11 of the United States Bankruptcy Code. Section 105 provides, in pertinent part:

(a) The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section of the Code vests bankruptcy courts with statutory contempt powers. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 n. 1 (6th Cir.2000).

■ KORT contends that this Court should find that PTS and Schexneider's actions constitute both criminal and civil contempt. The difference between a finding of criminal contempt and a finding of

civil contempt depends upon the nature of the sanction issued. Civil contempt sanctions are meant to coerce compliance or compensate a complainant for his actual losses. *In re Stockbridge Funding Corp.,* 158 B.R. 914, 918 (S.D.N.Y.1993), citing *United States v. United Mine Workers of Am.,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Criminal contempt sanctions are intended to punish the wrongdoer or to vindicate a court's authority. *Id.* Based upon the record before the Court, civil contempt sanctions are appropriate in this case.

■ Civil contempt sanctions for purposes of coercing Defendants' compliance with the 2003 injunction would be meaningless at this stage. Subsequent to discovering that the KORT manual was still on PTS' server and used by its employees to create part of the PTS manual, the copy on the server was deleted and PTS created another manual without using the KORT manual. The Court is persuaded at Defendants' lack of bad faith by the evidence that Defendants voluntarily allowed KORT representatives to interview PTS' employees and to view their PTS manual in January of 2005. This evidence helped establish that the use of the KORT manual was unwittingly used by Williams who had no knowledge of the terms of the 2003 injunction. This negates any finding of bad faith or malicious conduct on the part of Defendants in using the KORT manual.

An appropriate sanction in this instance would be compensation to KORT for the wrongful use of its proprietary property by PTS. The prior management agreement between KORT and PTS required PTS to pay KORT 9% of its monthly gross revenues. This agreement included services other than the creation of the Policy and Procedures Manual. Given the Court's finding of lack of bad faith on PTS' part and the absence of evidence on damages, other than the use of parts of the KORT manual, the Court finds an award to KORT of monetary damages equaling 2% of PTS' monthly gross revenues for the period PTS used KORT's materials is appropriate. The Court determines that this period of time was February 3, 2003, the date of the injunction, to February 1, 2005. The Court declines to award KORT its attorney's fees.

### *CONCLUSION*

For all of the above reasons, the Court **GRANTS** the Motion to Enforce Injunction of Plaintiff Kentucky Orthopedic Rehab Team, P.S.C. An Order incorporating the findings herein accompanies this Memorandum–Opinion.

### *ORDER*

Pursuant to the Memorandum–Opinion entered this date and incorporated hereby by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion to Enforce Injunction of Plaintiff Kentucky Orthopedic Rehab Team, P.S.C., be and hereby is, **GRANTED.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants PT Specialists PLLC a/k/a/ Physical Therapy Specialists, P.S.C. and Malton Schexneider shall pay Plaintiff Kentucky Orthopedic Rehab Team, P.S.C. 2% of its monthly gross revenues from February 3, 2003 to February 1, 2005.