**FEDERATION OF PUERTO RICAN OR-GANIZATIONS OF BROWNSVILLE, INC., Plaintiff,**

**v.**

**Elin HOWE, as Commissioner of the State of New York Office of Mental Retardation and Developmental Disabilities, and Dall Forsythe, as Director of the Budget of the State of New York, Defendants.**

**Nos. 92 CV 2284, 92 CV 2856.**

United States District Court, E.D. New York.

July 15, 1993.

Marvin L. Tenzer, P.C. (Scott Lunin, of counsel), New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y. (David S. Cook, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

In February 1990, plaintiff, the Federation of Puerto Rican Organizations of Brownsville, Inc. a non-profit corporation operating mental health care facilities participating as providers in the New York Medical Assistance ("Medicaid") program, filed for bankruptcy under 11 U.S.C. §§ 1101 *et seq.*

Defendants Elin Howe, the Commissioner of the State of New York Office of Mental Retardation and Developmental Disabilities (the State Office), and Dall Forsythe, the Director of the New York State Budget Division (the Budget Division), establish the rate at which Medicaid reim-

burses plaintiff for treatment of eligible individuals.

Defendants appeal a ruling dated April 2, 1992 by Bankruptcy Judge Dorothy Eisenberg holding Howe in contempt and ordering her to pay plaintiff $1,681.40 in attorneys' fees.

### I.

After filing for bankruptcy plaintiff filed an adversary proceeding in August 1990 against defendants to require them to process its appeal of the rate at which defendants reimburse it for services provided.

By stipulation dated December 21, 1990, and so ordered by the bankruptcy court on January 8, 1991, the parties agreed that (1) the State Office would complete its review of plaintiff's rate appeal by January 15, 1991 and submit its determination to the Budget Division for approval, (2) by January 31, 1991 the Budget Division would approve the determination and deliver copies of the revised rates and the basis for the determination to the attorneys for plaintiff, and (3) on compliance by defendants with these provisions, plaintiff would discontinue the adversary proceeding.

Defendants failed to comply, and by order to show cause dated on April 5, 1991, plaintiff moved to hold them in contempt.

By April 23, 1991, the hearing date before the bankruptcy judge on the motion, defendants failed to file opposing papers, but their attorney appeared at the hearing to request an adjournment in order for the parties to negotiate a settlement. Defendants' attorney stated that the bankruptcy court "has no jurisdiction to determine ... disputes with respect to a rate appeal itself." The bankruptcy judge granted the adjournment.

On May 6, 1991 the State Office mailed to plaintiff's president (not to its attorneys as stipulated) the results of the rate appeal granting plaintiff an additional $1.7 million but denying the remainder of plaintiff's request. The letter from the State Office said that plaintiff had 30 days from "service of this notification" to request a hearing on the partial denial.

Sometime before June 3, 1991 the attorneys for plaintiff called defendants' attorneys requesting a more detailed explanation of the partial denial. By letter dated June 3, 1991 the State Office responded by citing the materials sent on May 6, 1991.

On June 21, 1991 plaintiff's attorneys wrote to the State Office requesting a copy of the audit report used in the rate appeal and a hearing on the partial denial to be scheduled after he reviewed the audit report.

On June 25, 1991 the State Office wrote to plaintiff's attorney denying his request for a hearing as untimely under N.Y.Comp. Codes R. & Regs. tit. 14, § 602.6(b)(2) unless neither he nor plaintiff received notice of the denial before May 21, 1991. Plaintiff's attorney objected in a letter dated July 1, 1991 that he had not received notice of the denial until after May 21. The State Office responded by letter July 17 that the hearing request was still untimely since plaintiff did not deny receiving the notice by May 21, 1991.

On August 6, 1991 plaintiff by order to show cause moved for an order to defendant Howe, Commissioner of the State Division, to provide to plaintiff the factual basis for the partial denial of the rate appeal and "to process plaintiff's request for a hearing" on the denial.

Again, the attorney for the State Division Howe failed to submit opposing papers before the hearing date, August 22, 1991, but appeared to request an adjournment to file a motion to dismiss the bankruptcy proceeding because the relief sought extended beyond the January 1991 stipulation and the bankruptcy judge lacked subject matter jurisdiction. The judge denied the request.

In support of the motion plaintiff's attorney stated that defendants had violated the January 8, 1991 stipulation by failing to serve him with the results of the appeal. Defendants' attorney stated that he remembered that someone in the State Office had sent the attorney a copy of the results "by fax." Plaintiff's attorney denied receiving it.

Defendants' attorney submitted an affidavit from the State Office's deputy counsel saying that the State Office had sent plaintiff notification by "United Parcel" on May 6, 1991, which was delivered the next day. The applicable state regulations require that notice be sent by certified mail. N.Y.Comp.Codes R. & Regs, tit. 14 § 681.-12(d)(6).

The bankruptcy judge ruled that because defendants had "not complied with either the regulations or with the stipulation" plaintiff should not "be precluded from its rights to an appeal." She said that "we are going to begin whatever process there is as of tomorrow's date [August 23, 1992]."

The judge directed plaintiff to submit a proposed order directing defendants to serve the results of the appeal "pursuant to both the regulations and the stipulation."

On August 23, 1991 the day after the hearing, the State Office mailed the results of the rate appeal by certified mail to plaintiff and its attorney. Following the hearing, plaintiff submitted a copy of a proposed order directing that (1) defendants comply with the January 8, 1991 stipulation by mailing the results to plaintiff's attorney and to plaintiff by certified mail, (2) plaintiff had 30 days from its receipt of such notice to request a hearing, and (3) such "hearing request shall be expeditiously processed" by the State Office.

By letter dated September 3, 1991 defendants' attorney objected to the second and third parts of the order arguing that, "while the Court expressed its desire to restore the plaintiff-debtor's administrative appeal rights, there was no ruling by the Court on that issue."

On September 13, 1991 the judge signed the proposed order, thus implicitly rejecting defendants' argument.

Defendants did not appeal the order or move to dismiss the proceeding.

On September 30, 1991, the State Office denied as untimely plaintiff's request dated September 20 for a hearing on the partial denial of its rate appeal.

On December 17, 1991 plaintiff brought an order to show cause why defendant Howe should not be held in willful contempt for failing to comply with the September 13, 1991 order.

Defendants were served with the December 17, 1991 order to show cause and were given notice of the February 13, 1992 hearing, at which their attorney appeared. Defendants did not challenge the prior finding that they had not served the results of the appeal in accordance with the stipulation or the regulations. Nor did they contest the fact that they denied plaintiff's request for a hearing submitted within 30 days after notice was mailed as ordered by the judge at the hearing on August 22, 1991 and by the September 13, 1991 order.

Defendants' attorney argued that defendants had complied with the bankruptcy court's order to "process[ ]" plaintiff's request for a hearing by responding in writing that the request was untimely. The bankruptcy aptly characterized this as "ridiculous."

Defendants had, prior to the order, responded in writing to plaintiff's request for a hearing that it was untimely; their interpretation would render meaningless the order to "process" the hearing request. Furthermore, defendants' attorney's letter of September 3, 1991 reflected that he understood the order to "restore the plaintiff-debtor's administrative appeal rights."

Defendants also argued that the bankruptcy court lacked authority for its September 13, 1991 order. The court noted that defendants had not appealed that order and it had therefore become final. She directed plaintiff to submit an order holding Howe in contempt.

On April 3, 1992 the bankruptcy signed an order holding Howe in contempt, directed her to pay $1,681.40 to plaintiff's attorney for his fees and disbursements.

On April 10, 1992, defendants filed a notice of appeal. By order dated October 21, 1992, this court extended defendants' time to perfect their appeal. This court

granted a further extension on December 24, 1992 and another on January 19, 1993.

## II.

■ On appeal of an order by the bankruptcy court this court will overturn the bankruptcy judge's finding of facts only if they are clearly erroneous and reviews her conclusions of law *de novo.* Bankr.R. 8013; *In re Unioil, Inc.,* 962 F.2d 988 (10th Cir.1992).

■ A finding of civil contempt is justified "only if there is a clear and unambiguous order, noncompliance is proved clearly and convincingly, and 'the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Drywall Tapers, Local 1974 v. Local 530,* 889 F.2d 389, 394 (2d Cir.1989) (citations omitted), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990).

The bankruptcy judge said at the February 13, 1992 contempt hearing that her September 13, 1991 order was "pretty clear," that "the record was very clear," and that defendants' interpretation was "ridiculous." She also found that the order "was totally disregarded by the commissioner [Howe]."

The judge's conclusions are supported by the record. The discussion between the bankruptcy judge and the attorneys at the hearing in August 1991 made clear that the judge intended to order the defendants to re-serve plaintiff and its attorney with the results of the rate appeal and to grant a hearing if plaintiff so requested with 30 days of receiving those results. As defendants' attorney said, "But, your Honor is implicitly making a finding that the appeal process has—has—may be—may be started anew from service on [plaintiff's attorney]." When defendants' attorney challenged the judge's power to make such an order, the judge directed him to "bring your motion, on your jurisdictional issue."

Rather than bring the motion and allow the bankruptcy judge to rule on the issue, defendants chose to ignore the obvious meaning of the order.

Defendants' various arguments that jurisdiction is lacking and the contempt order was unlawful are without merit.

■ The district court has original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. This dispute over reimbursement rates is "related to" plaintiff's bankruptcy petition as it affects its ability to prepare a reorganization plan.

A bankruptcy judge may hear any proceeding arising under or related to title 11, and may issue final orders only as to "core proceedings," defined at 28 U.S.C. § 157(b)(2). Plaintiff asserted in its complaint filed with the bankruptcy court that its dispute was a core proceeding under 28 U.S.C. § 157(b)(2)(O). That section provides that "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims" are core proceedings.

■ Section 157 also provides that the bankruptcy judge shall determine, "on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." Although defendants argue before this court that this dispute is not a core proceeding, this objection raised more than two years after the complaint was filed cannot be construed as "timely." Furthermore, defendants agreed to have the bankruptcy judge sign the settlement agreement and enter it as an order of that court, thus implicitly consenting to that court's authority to enter a final order in this proceeding. Defendants cannot challenge that authority now. *See In re G.S.F. Corp.,* 938 F.2d 1467, 1476–77 (1st Cir.1991) (by consenting to have bankruptcy court enter a final judgment parties consented to its jurisdiction to enter final order); *In re Rath Packing Co.,* 75 B.R. 137 (N.D.Iowa 1987) (failure to make timely motion implies consent to the characterization of proceeding as "core"), *aff'd,* 860 F.2d 1086,

(8th Cir.1988); *see also* 28 U.S.C. § 157(c)(2) (parties may consent to jurisdiction of bankruptcy court to enter orders and judgment). This court therefore treats the dispute as a core proceeding.

 Even if defendants had successfully challenged plaintiff's characterization of this proceeding as "core," it would have remained before the bankruptcy judge but her power would be limited to making recommendations to this court, which could adopt them as final orders. Defendants could have made a "timely motion" under 28 U.S.C. § 1334(c)(2) requesting the court to abstain from exercising jurisdiction to allow the action to be "timely adjudicated, in a State forum of appropriate jurisdiction." Absent such a timely motion, this case is properly in federal court under 28 U.S.C. § 1334(b), as alleged in the complaint. *See* 1 *Collier on Bankruptcy* ¶ 3.01[b] at 3–81 (Lawrence P. King, ed., 15th ed. 1993) (failure to timely move for abstention constitutes waiver). *See also In re Novak,* 116 B.R. 626 (N.D.Ill.1990) (motion for abstention filed one year after answer not timely); *In re Mauldin,* 52 B.R. 838 (N.D.Miss.1985) (abstention not applicable where never requested and no state case pending).

Defendants now challenge the bankruptcy judge's factual findings saying that plaintiff was served by certified mail as required by the regulations. They do not produce any receipt and fail to explain why this alleged fact was not brought to the bankruptcy judge's attention between August 6, 1991, when defendants' compliance with the regulations was first raised, and April 3, 1992, when the judge signed the contempt order.

The cases cited by defendants to say that the bankruptcy judge lacks authority to issue a civil contempt order are inapposite; they deal with only criminal contempt. *See Griffith v. Oles (In re Hipp),* 895 F.2d 1503 (5th Cir.1990); *United States v. Guariglia,* 962 F.2d 160, 163 (2d Cir.1992) (citing *Griffith* with approval). *Griffith* distinguished criminal from civil contempt, finding that the bankruptcy court may have civil con-

tempt power under 11 U.S.C. § 105, 28 U.S.C. § 157, or its inherent powers.

It is unlikely that Congress would have granted a bankruptcy judge the power to issue a final order without the power to compel compliance. *See In re McLean Industries, Inc.* 68 B.R. 690, 695 (S.D.N.Y. 1986) (bankruptcy court has civil contempt power under its inherent power, district court's inherent power, and 11 U.S.C. § 105). Section 105, title 11 provides, the "court may issue any order ... that is necessary or appropriate to carry out the provisions of this title."

In any event, this court would come to the same conclusion as did the bankruptcy judge—that Howe deliberately and willfully failed to comply with a valid court order and should have been held in contempt.

 Defendants say also that the September 13, 1991 order was in violation of the Eleventh Amendment granting immunity to the states and that Howe therefore cannot be held in contempt for failing to violate an invalid order. But, as noted above, defendants entered into a stipulation and order agreeing to review plaintiff's rate appeal by a certain date and to provide the results to its attorney. They thus waived their immunity as to this issue. *See New York State Ass'n for Retarded Children v. Carey,* 596 F.2d 27, 34 (2d Cir.), *cert. denied* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979).

Defendants assert that this is a "new state law claim" for which they did not waive their immunity. But the September 13, 1991 order and the April 2, 1992 contempt order relate to defendants' failure to comply with the January 8, 1991 stipulation and thus fall within the waiver. Because plaintiff contends that its initial delay in requesting a hearing resulted from defendants' failure to provide them notice as required by the stipulation, its request for a hearing is not a new claim.

Finally defendants argue that the bankruptcy judge failed both to hold an evidentiary hearing and to require personal service on Howe thus causing a "blatant violation of due process."

■ Bankruptcy Rule 9020, requires that contempt be determined only after "a hearing on notice." The written notice must (1) state the essential facts, (2) state the place and time of the hearing, and (3) identify the contempt as civil or criminal. Written notice complying with the first two requirements was served on Howe's attorney. The parties appear to have assumed that this was a determination of civil contempt.

■ Howe did not submit any papers in opposition to plaintiff's order to show cause either before or at the February 13, 1992 hearing. Neither did Howe's attorney suggest the existence of any question of fact as to her contempt, other than the reasonableness of her attorney's interpretation of the September 13, 1991 order. When the judge stated on the record that "the commission[er]" failed to obey a court order, Howe's attorney objected only to the bankruptcy judge's authority to issue a contempt order. Howe cannot now complain she was deprived of her right to an evidentiary hearing that she never requested. *See* Rule 43(b) of the Local Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York (evidentiary hearing as to contempt available on demand if contemnor "puts in issue his or her alleged misconduct").

Howe's attorney appeared on her behalf at the hearing. Howe provides no relevant authority for her assertion that service on her attorney of record rather than on her personally violates due process. *Cf. Drywall Tapers*, 889 F.2d at 395 (citing with approval Local Civil Rule 43(a) providing for "notice by service upon a party's attorney" or under the Federal Rules of Civil Procedure). Howe has not demonstrated any violation of her right to due process.

The only surprising aspect of this appeal is the modesty of the amount allowed plaintiff's attorney in fees and disbursements.

### III.

Defendants' appeal is denied. Howe is directed to pay plaintiff $1,641.40 in attorneys' fees. Defendants are directed to comply with the September 13, 1991 order in all respects.

### IV.

This court finds that the appeal does not have the faintest merit. The court directs the parties to submit papers within thirty days addressed to whether the court should impose sanctions and other costs on defendant Howe or her attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927, and if so in what amount.

So ordered.