**In re BIBO, INC., a California Corporation, Debtor.**

**Robert FUKUTOMI, Appellant,**

**v.**

**UNITED STATES TRUSTEE, Appellee.**

**No. 94–56118.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 15, 1995.*

Decided Jan. 24, 1996.

John F. Shellabarger, McIntosh & Patison, Santa Ana, California, for appellants.

Paul F. Schimley, Anderson, McPharlin & Conners, Los Angeles, California, for appellee.

Before HUG, BEEZER, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

We affirm the bankruptcy judge's sua sponte decision to appoint a Chapter 11 trustee.

### Facts

Fukutomi owned Bibo, Inc. which owned an apartment complex. He operated the corporation as debtor in possession, after Bibo filed for relief under Chapter 11 of the Bankruptcy Code. Fukutomi also was a principal in at least one other apartment complex.

This case arose out of proceedings on Fukutomi's attempt to get bankruptcy court approval for his and his daughter's management fees. Creditors objected, so the court scheduled a hearing. The court consolidated

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

the Bibo hearing with a hearing in another bankruptcy case, *In re El Prado,* involving another of Fukutomi's apartment complexes. In *El Prado,* the court granted a creditors' motion for the appointment of a trustee, based on an examiner's report.

At the time of the hearing, there was no motion by the creditors for appointment of a trustee in the *Bibo* case. But the judge discovered in the papers a declaration which stated in the plainest terms, by a person with personal knowledge, that Fukutomi was siphoning money out of Bibo by means of a kickback scheme.

Mark Thomas, a property manager, submitted a sworn declaration establishing the kickback scheme. He said that the market price for managing something like the Bibo complex was 2.5% to 3% of gross monthly rents. He told Fukutomi he would provide full service real estate management for the complex, which would include accounting, for 2.5%. Fukutomi told him that 2.5% "simply would not work," and Thomas should bid the job for 5%, then pay Bibo 2.5% out of the 5%. Thomas prepared the management contract accordingly.

When a man named Don Louie, whose trust co-owned some of the lots, heard about this from Thomas, he was furious, and refused to sign off on the 5% fee for the lots Mr. Louie co-owned. Fukutomi told Mr. Thomas he should not have "blabbed to Don Louie about the deal."

The judge said at the hearing that she wondered why no one had moved for appointment of a trustee. In light of the judge's comment, Bibo's lawyer called Mr. Thomas as a witness (he was in the courtroom), and he testified and was cross-examined. Mr. Thomas' testimony was consistent with his declaration and supplied additional detail. Fukutomi told Mr. Thomas he did not want the 2.5% that would go back to Fukutomi recited in the proposal which would have to be submitted to the court. Instead, Fukutomi wanted a side agreement. The 2.5% fee Mr. Thomas originally proposed would have covered all accounting services. Fukutomi bargained to charge Bibo twice that fee for essentially the same work.

After Mr. Thomas's testimony, the judge asked Bibo's attorney if he had any witnesses, and took a brief recess. After the recess, Bibo's attorney asked for a continuance before appointment of a trustee was decided, but the judge denied his request. She stated that her reason for denying the continuance was the "secretiveness, if not outright dishonesty" of the debtor in possession. Based on the evidence, she thought there was such mismanagement that "I want someone to take over all the assets of the debtor today. I do not want Mr. Fukutomi or Ms. Fukutomi to have access to any of the assets of this estate hereinafter from the moment they walk out the door until all this case is resolved one way or another." She then directed the U.S. Trustee to appoint a trustee to take over all assets of the debtor immediately.

That same day, the court issued a written order directing the U.S. Trustee to appoint a trustee. The court expressly found fraud:

The Court further finds that the actions of Robert Fukutomi as principal of the debtor-in-possession have been in the best interests only of his own financial gain and that of his family members and not for the benefit of creditors. In particular, this Court relies upon the Declaration of Mark Thomas, filed with this Court on March 11, 1993 in connection with a relief from stay matter which was settled prior to the scheduled hearing thereon. Accordingly, the Court has not previously considered this Declaration. It is clear from Mr. Thomas' testimony that Robert Fukutomi has engaged in fraudulent behavior with reference to this estate by requiring a 50% kickback from Thomas' property management company. It should be noted that the employment of an independent management company was ordered by this Court in November 1992 to replace the prior management company which was also a Fukutomi-owned enterprise. It is abundantly clear to this Court that the interests of creditors are not being promoted by Robert Fukutomi's management of this debtor.

Bibo appealed to the district court, which affirmed.

### Analysis

■ We review the district court's decision on appeal from bankruptcy court *de novo*. *In re Daily*, 47 F.3d 365, 367 (9th Cir.1995). "We independently review the bankruptcy court's decision and do not give deference to the district court's determinations." *In re Weisman*, 5 F.3d 417, 419 (9th Cir.1993). The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *Id.*

### A. Sua sponte appointment.

■ Appellant argues that a bankruptcy court lacks authority to appoint a trustee in a Chapter 11 proceeding sua sponte. We disagree.

The statute plainly gives the bankruptcy judge authority to appoint a trustee sua sponte. A trustee may be appointed "on request of a party in interest or the United States trustee." 11 U.S.C. § 1104(a). The provision entitling a United States trustee or party to make such a request does not preclude the court from doing so sua sponte:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. 105(a). Though we have not found circuit court authority on point, appointments sua sponte have been understood by bankruptcy courts as authorized. *See In re Embrace Systems Corp.*, 178 B.R. 112 (Bankr. W.D.Mich.1995); *Matter of Mother Hubbard, Inc.*, 152 B.R. 189, 197 (Bankr.W.D.Mich. 1993).

### B. Factual justification.

Appellant argues that there was no evidence which would justify sua sponte appointment of a trustee in this case. The Code says a trustee "shall" be appointed: (1) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," or (2) if appointment is "in the interests of creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a). The judge's well-founded findings established fraud, dishonesty, gross mismanagement, and that appointment was in the interests of the estate.

Appellant points out that the attorney for the creditors' committee did not request appointment of a trustee. At least one other creditor's attorney, however, requested that the court "on its own appoint a trustee in this case." Even without such a request, the court is empowered to sua sponte appoint a trustee in order to protect the estate.

The bankruptcy judge, not the attorney for the creditors' committee, judges whether to appoint a trustee. The bankruptcy judge had good reasons for doing so, precisely in accord with what Congress listed as appropriate reasons. The fraud demonstrated here elicited action from the judge even though the creditors' committee attorney had not raised the issue. No doubt it was because of situations like this, where appointment is highly desirable to prevent looting of the estate, and the judge is the first to comprehend its necessity, that Congress gave bankruptcy judges the power to do so.

### C. Due process.

■ Fukutomi claims that he was not given adequate notice or opportunity to be heard on the issue of appointment of a trustee. Although Fukutomi says the bankruptcy court knew of the allegations in the Thomas Declaration months before the hearing, the judge stated that she did not read the declaration until the day of the hearing.

The statute codifies the proposition that a trustee may be appointed "after notice and a hearing." 11 U.S.C. § 1104(a). The rules require "reasonable" notice and opportunity for hearing. Fed.R.Bank.P. 9014. The Code defines the term "after notice and a hearing" as meaning such notice and hearing as is appropriate in the circumstances:

> (1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances

11 U.S.C. § 102(1).

Fukutomi received notice, because the judge stated what she was considering doing, and he received a hearing. He was given an opportunity to cross examine Thomas, whose allegations were the basis for the appointment. We do not have occasion to decide here whether a trustee could have been appointed without a hearing.

The notice and hearing the judge afforded to Fukutomi were, as she determined, appropriate in the circumstances. One critical circumstance was that he was in possession of the estate, and another was that he was fraudulently looting it. As the judge explained, there was a threat to the estate if he could walk out the courtroom door and still be in control of it. Bankruptcy courts have traditionally limited hearings to what was necessary in the circumstances to decide disputed questions relating to appointment of a trustee. *In re Casco Bay Lines, Inc.,* 17 B.R. 946, 950 (1st Cir. BAP 1982); *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 167 (S.D.N.Y.1990). It appears that Fukutomi was in court, and his lawyer had a short recess to find out from him whether he could testify to anything useful.

Conclusion

The bankruptcy court had authority to act sua sponte to appoint a Chapter 11 trustee, did so for reasons denoted in the statute, and had ample basis for her findings of fact supporting those reasons.

AFFIRMED.