In the Matter of NGAN GUNG
RESTAURANT, INC.,
Debtor.

NGAN GUNG RESTAURANT,
INC., Appellant,

v.

OFFICIAL COMMITTEE OF UNSE-
CURED CREDITORS OF NGAN GUNG
RESTAURANT, INC. and 318 Restau-
rant Workers Union, Appellees.

No. M 47 (JGK).

United States District Court,
S.D. New York.

May 18, 1996.

---

594

Steven Stein, New York City, for Plaintiff–Appellant.

Bruce Weiner, Rosenberg Musso & Weiner, Brooklyn, New York, for the Official Committee of Unsecured Creditors of Ngan Gung Restaurant, Inc.

Ellen Dichner, Gladstein Reif & Meginniss, New York City, Merrill J. Clark, New York City, for 318 Restaurant Workers Union.

Ira R. Abel, New York City, for the trustee Henry Fong.

## OPINION

KOELTL, District Judge:

The debtor-appellant Ngan Gung Restaurant, Inc. appeals an order of the Bankruptcy Court (Garrity, J.), dated December 8, 1995 (the "Order"), which directed the Office of the United States Trustee to appoint immediately a Chapter 11 trustee as punishment for the appellant's contempt.

This is a case under Chapter 11 of the Bankruptcy Code. By order to show cause dated November 8, 1995, the defendants-appellees, the Official Committee of Unsecured Creditors of Ngan Gung Restaurant, Inc. and 318 Restaurant Workers Union submitted an application for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a). On November 14, 1995, the appellees served the Debtor with a subpoena which required the Debtor to produce certain documents, including a portion of its 1994 banquet book. The banquet book was used to record reservations for banquets conducted at the Debtor. The Debtor objected to the discovery requests as burdensome. At a conference call on November 16, 1995, the Bankruptcy Court directed the Debtor to comply with the subpoena. On November 19, 1995, the Debtor produced the 1995 and 1996 banquet books but failed to produce the 1994 banquet book.

The hearing on the Application to appoint a Trustee continued on November 22, 1995. On that day, counsel to the Union informed the court that the Debtor had failed to produce the 1994 banquet book and orally moved for sanctions under Fed.R.Civ.P. 45(e). (12/8/95 Tr. at 7–10.) Judge Garrity ordered the Debtor to provide the appellees with an explanation of what happened to the 1994 banquet book. The Debtor's counsel told the court that the 1994 book had ceased to exist as of one or two months earlier. (12/8/95 Tr. at 7.) By letter dated November 28, 1995, the Debtor told the defendants that the 1994 book was discarded in the ordinary course of business in early November, before the order to show cause was served. (12/8/95 Tr. at 8.)

On November 29, 1995, the appellees made an oral motion for sanctions under Fed.R.Civ.P. 45, again suggesting that the appropriate sanctions for the Debtor's failure to produce the 1994 banquet book would be a Rule 37 sanction. At that time, the Bankruptcy Court conducted an evidentiary hearing where five witnesses testified. Richard Chan, the Debtor's Executive Director, testified that he personally threw out the 1994 book in the early part of November 1995 in the ordinary course of business. Later in his testimony, Chan admitted that the Debtor had no policy regarding the discarding of banquet books and that he did so when he saw fit. (12/8/95 Tr. at 11.) Chan testified that he threw out the 1994 book with the 1993 book because he felt like throwing it out. (12/8/95 Tr. at 11.) In addition, Chan stated that he did not know whether he had thrown out the book before the Debtor was served with the Bankruptcy Trustee Application. (12/8/95 Tr. at 11.) The Bankruptcy Court discredited Chan's testimony as uncorroborated and self-serving (12/8/95 at 15) and made a finding that the Debtor did not have a policy regarding the retention of its banquet books. (12/8/95 Tr. at 11, 15.)

Siu Nin Wong, a waiter employed by the Debtor, testified that several banquet books, including the 1994 book, were removed from a storage area at the direction of Mr. Chan three hours after the Debtor was personally served with the subpoena for the banquet books. (12/8/95 Tr. at 12.) Kei Choi Wang testified that on November 14 he saw Ha Moon Leung, a manager of the Debtor, take the banquet books, including the 1994 book, to Mr. Chan and then bring them to Mr. Chan's office. The Bankruptcy Court fully credited both Siu Nin Wong's and Kei Choi Wong's testimony.

At the end of the November 29 hearing, the Bankruptcy Court directed the appellees to provide a memorandum explaining what sanctions they were seeking and the legal support for these sanctions. The appellees requested five independent sanctions including an order precluding the Debtor from introducing evidence, a finding of contempt, and a finding that Richard Chan's dishonesty, incompetence, and mismanagement justified the appointment of a trustee under section 1104(a)(1) of the Bankruptcy Code. The Debtor submitted a reply memorandum.

On December 7, 1995, after receiving briefs from both sides, the Bankruptcy Court permitted the Debtor to present rebuttal wit-

nesses. The Debtor called two witnesses. The first was Mr. Leung, who the Bankruptcy Court found acknowledged that the Debtor did not have a policy regarding the disposal of banquet books. (12/8/95 Tr. at 11.) The Debtor's second witness was Ted Chan, the brother of Richard Chan, who testified about when his brother learned that the November 14, 1995 subpoena was served. Ted Chan stated that he was present at the time the subpoena was served on an officer of the Debtor, and his brother Richard was not at the restaurant at that time. (12/7/95 Tr. at 49–53.) The Bankruptcy Court found Ted Chan's testimony "evasive and unbelievable." (12/8/95 Tr. at 14.)

On December 8, 1995, Bankruptcy Judge Garrity held the Debtor in contempt for failing to comply with the subpoena served by · the defendants on November 14, 1995. Stating that it "cannot permit Debtor to remain in possession in the face of clear and convincing evidence that its management is not trustworthy and thus cannot fulfill the fiduciary obligations of a Debtor in Possession to its creditors," the Bankruptcy Court ordered the immediate appointment of a Chapter 11 trustee. (12/8/95 Tr. at 18.) Judge Garrity stated:

> This is not an Order authorizing the appointment of the Chapter 11 operating Trustee. It is an Order finding the Debtor in contempt and sanctioning the Debtor for its contempt. The contempt is on the appointment of a Chapter 11 Trustee. I have not granted your motion to appoint a Trustee. I have sanctioned the Debtor for its contempt under my inherent powers, as well as Federal Rule of Civil Procedure 45(e).

(12/8/95 Tr. at 20.)

## II. ANALYSIS

 The Court reviews the bankruptcy court's conclusions of law de novo and findings of fact under a clearly erroneous standard. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990); *cert. denied sub nom. Air Line Pilots Assn. Int'l v. Shugrue*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); Fed.R.Bankr.P. 8013. The abuse of discretion standard governs the review of the bankruptcy court's imposition of sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991) (standard of review for court's imposition of sanctions reviewed under abuse of discretion standard); *see also In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir.1989) (appointment of trustee reviewed under abuse of discretion standard); *Pereira v. Felzenberg*, No. 94 Civ. 7105, 1996 WL 101224, at *2 (S.D.N.Y. March 8, 1996) (Sweet, J.) (employing abuse of discretion standard to review bankruptcy court's imposition of sanctions under Fed.R.Bankr.P. 7037); *In re Owen*, 96 B.R. 427, 428 (N.D.N.Y.1989) (abuse of discretion standard governs review of appointment of trustee).

The Bankruptcy Court made it clear in its oral decision, and the parties do not dispute, that in appointing a trustee the Bankruptcy Court was not granting the appellees' application for the appointment of a trustee pursuant to 11 U.S.C. § 1104(a), which provides that a trustee may be appointed "on request of a party in interest or the United States trustee." 11 U.S.C. § 1104(a). Instead, the Bankruptcy Court stated that it ordered the immediate appointment of a trustee under Fed.R.Civ.P. 45(e)[1] and the bankruptcy court's inherent powers under 11 U.S.C. § 105(a)[2] as a sanction for the Debtor's contempt.

 The initial question is whether the Bankruptcy Court had the power to appoint

---

1. Fed.R.Civ.P. 45(e) provides in relevant part:

 CONTEMPT. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. . . .
 Fed.R.Civ.P. 45 is applicable in bankruptcy proceedings pursuant to Fed.R.Bankr.R. 9016.

2. Section 105 provides in pertinent part:

 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

a trustee as a contempt sanction. To answer this question, the Court must determine whether this contempt sanction was a remedy for civil contempt or a punishment for criminal contempt. Although the Court of Appeals for the Second Circuit has not explicitly addressed the scope of the bankruptcy court's contempt powers, the majority of courts to confront this issue agree that in core proceedings bankruptcy courts have civil contempt power pursuant to 11 U.S.C. § 105.[3] *In re Power Recovery Sys., Inc.,* 950 F.2d 798, 802 (1st Cir.1991); *In re Skinner,* 917 F.2d 444, 447 (10th Cir.1990); *In re Walters,* 868 F.2d 665, 669–70 (4th Cir.1989); *In re Ionosphere Clubs, Inc.,* 171 B.R. 18, 21 (S.D.N.Y.1994) (Mukasey, J.); *In re Stockbridge Funding Corp.,* 158 B.R. 914, 917 (S.D.N.Y.1993) (Sprizzo, J.); *Federation of Puerto Rican Orgs. of Brownsville, Inc. v. Howe,* 157 B.R. 206, 211 (E.D.N.Y.1993) (Nickerson, J.); *In re Max Frankel,* 192 B.R. 623, 629–30 (Bankr.S.D.N.Y.1996) (listing cases); *but see In re Sequoia Auto Brokers Ltd., Inc.,* 827 F.2d 1281, 1283–91 (9th Cir. 1987). The bankruptcy court's authority to impose criminal contempt sanctions is much less certain than its power to impose civil contempt sanctions. Although there is authority that bankruptcy courts have the authority to impose criminal sanctions, *see In re Power Recovery Sys.,* 950 F.2d at 802, the Court of Appeals for the Second Circuit stated in *United States v. Guariglia,* 962 F.2d 160 (2d Cir.1992), that this is a "serious question." *Id.* at 163; *see also In the Matter of Hipp, Inc.,* 895 F.2d 1503, 1509–21 (5th Cir.1990) (bankruptcy courts have no power to impose criminal contempt sanctions); Fed. R.Bankr.P. 9020, Advisory Committee Note ("This rule, as amended, recognizes that bankruptcy judges may not have the power to punish for contempt.").

In this case, the Bankruptcy Court found the debtor guilty of contempt only by "clear and convincing evidence," (12/8/95 Tr. at 9) and not "beyond a reasonable doubt," which would be required for a finding of criminal liability. *See Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911); *Harris v. City of Philadelphia,* 47 F.3d 1311, 1329 (3d Cir. 1995) (refusing to uphold sanction for criminal contempt where requisite procedural protections were not accorded); *In the Matter of Hipp,* 895 F.2d at 1509 (indicating the procedural protections for criminal contempt sanctions); *In re Stockbridge,* 158 B.R. at 919 (vacating a sanction for criminal contempt because the sanction was imposed without a finding of criminal contempt established beyond a reasonable doubt). Therefore, the Bankruptcy Court's appointment of a trustee as a contempt sanction can only be affirmed if this appointment is a remedy for civil contempt and not a punishment for criminal contempt.

■ None of the parties has offered any cases discussing the proper characterization of a contempt sanction involving the appointment of a trustee. In *International Union, United Mine Workers of America v. Bagwell,* —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the Supreme Court recognized that "[a]lthough the procedural contours of the two forms of contempt are well established, the distinguishing characteristics of civil versus criminal contempt are somewhat less clear." *Id.* —— U.S. at ——, 114 S.Ct. at 2557. The Court stated that this determination rests on an examination of the character and purpose of the sanction involved. *Id.* (citing *Gompers,* 221 U.S. at 441, 31 S.Ct. at 498). The Court added that a contempt sanction is considered civil if it " 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.' " *Id.* (quoting *Gompers,* 221 U.S. at 441, 31 S.Ct. at 498). Generally, a civil contempt sanction "coerce[s] the defendant into compliance with the court's order, [or] ...

---

**3.** Contrary to the Debtor's arguments to the contrary, the contempt proceeding in this case was a core proceeding. Contempt proceedings dealing with or arising during core proceedings are also core proceedings. *See In re Skinner,* 917 F.2d 444, 448 (10th Cir.1990); *In re Monarch Capital Corp.,* 173 B.R. 31 (D.Mass. 1994), *aff'd,* 65 F.3d 973 (1st Cir.1995); *Haile v. New York State Higher Educ. Servs. Corp.,* 90 B.R. 51, 54 (W.D.N.Y.1988); *In re McLean Indus., Inc.,* 68 B.R. 690, 694 (S.D.N.Y.1986). A motion for the appointment of a trustee is a core proceeding.

compensate[s] the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *see Bagwell*, —— U.S. at ——–——, 114 S.Ct. at 2557–58 (difference between civil and criminal contempt in context of imprisonment and fines); *Harris*, 47 F.3d at 1328–29 (distinguishing between civil and criminal contempt); *King v. Allied Vision, Ltd.*, 919 F.Supp. 747, 751–52 (S.D.N.Y.1996) (Motley, J.) (same); *In re Stockbridge*, 158 B.R. at 918 (same). To the extent that a civil contempt order is coercive, it can be avoided through obedience to the order. When a contempt sanction is intended to compensate an injured party, proof of actual pecuniary losses is not necessary. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5–6 (2d Cir.1989).

▪ The Bankruptcy Court did in fact characterize the appointment of the trustee "as a punishment for the Debtor's contempt," (12/8/95 Tr. at 22), which indicates that the purpose of the sanction was punitive rather than compensatory. The Court's characterization of the sanction is not dispositive, however. *See Bagwell*, —— U.S. at ——, 114 S.Ct. at 2557.

▪ The Debtor argues that because the appointment of the trustee served neither to coerce compliance with the subpoena to produce records nor to compensate the appellees, the appointment of a trustee was in fact a punishment for criminal contempt and not a remedy for civil contempt. The Court agrees. First, the appointment of a trustee was immediate and permanent punishment. This sanction was clearly not intended to coerce compliance. The evidence before the Bankruptcy Court indicated that the 1994 Banquet Book had already been destroyed, and no order could bring it back. Moreover, even if the Debtor were to produce the 1994 banquet book today, the appointed trustee would remain in place. There was no indication that the appointment was one that could be purged by compliance. Second, the appellees have failed to demonstrate how this sanction compensates them for any loss, pecuniary or otherwise. Hence, the character and purpose of the sanction indicate that it was punishment rather than an effort to coerce compliance or compensate victims.[4] *See Harris*, 47 F.3d at 1328–29 (holding that dismissal of motion was a criminal contempt sanction because sanction was not compensatory and had no coercive effect).

▪ Although the Bankruptcy Court improperly imposed a criminal contempt sanction on the Debtor, a remand of this case is unnecessary because the Bankruptcy Court had the power to appoint a trustee under its inherent powers to sanction conduct abusive of the judicial process, independent of its powers to hold a party in contempt. *See Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223–1227 (3d Cir.1995) (affirming bankruptcy court's denial of fee application because even though the court misapplied Fed. R.Civ.P. 11 in denying the fee application, the court could have denied the application by exercising its inherent powers); *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089–90 (10th Cir.1994) (relying on bankruptcy court's inherent powers to affirm the assessment of attorney's fees on nonparty who filed the petition in bad faith even though bankruptcy court incorrectly relied on 28 U.S.C. § 1927).

It is well-established that a district court "has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir.1992), *cert. denied*, 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993) (citing *Chambers*, 501 U.S. at 44–45, 111 S.Ct. at 2132–33). It is generally agreed that bank-

---

4. The Debtor argues that the sanction was improperly imposed because the contempt proceeding did not comply with the procedural requirements of Fed.R.Bankr.P. 9020. The appellees argue that Rule 9020 does not apply to a contempt motion in a core proceeding. *See In re Spanish River Plaza Realty Co., Ltd.*, 155 B.R. 249, 251 n. 1 (S.D.Fla.1993); *In re Dug-* gan, 133 B.R. 671, 673–74 (Bankr.D.Mass. 1991); *see In re Stockbridge*, 158 B.R. at 916 n. 3 (noting that Rule 9020 references Rule 9033, which is the standard of review in noncore proceedings). It is unnecessary to resolve this conflict, however, because the order in this case cannot be sustained as a sanction for contempt in any event.

ruptcy courts possess the same inherent sanction powers that district courts enjoy. Some courts have held that these inherent powers are specifically derived from 11 U.S.C. § 105(a). *See, e.g., In re Courtesy Inns,* 40 F.3d at 1089. Other courts have held that the inherent powers of a bankruptcy court to sanction arise independently of any statutory authority. *See, e.g., In re Mroz,* 65 F.3d 1567, 1574–76 (11th Cir.1995); *Fellheimer,* 57 F.3d at 1224.

 Pursuant to this inherent power, courts have broad discretion to fashion appropriate sanctions for abuses of court processes. *Chambers,* 501 U.S. at 44–45, 111 S.Ct. at 2132–33. Bankruptcy courts have fashioned a variety of sanctions that have been upheld on appeal. *See, e.g., In re Courtesy Inns,* 40 F.3d 1084 (upholding imposition of attorneys' fees on nonparty for filing petition); *Matter of Hammers,* 988 F.2d 32, 34–35 (5th Cir.1993) (upholding sua sponte dismissal of Chapter 13 case). Most significantly, the Court of Appeals for the Ninth Circuit recently determined that a bankruptcy court may use its inherent powers to appoint a trustee sua sponte. *In re Bibo, Inc.,* 76 F.3d 256, 258 (9th Cir.1996); *see also In re Embrace Sys. Corp.,* 178 B.R. 112, 128–29 (Bankr.W.D.Mich.1995); *In the Matter of Mother Hubbard, Inc.,* 152 B.R. 189, 197 (Bankr.W.D.Mich.1993).

 The Bankruptcy Court had ample factual justification for appointing a trustee in this case. The testimony elicited at the hearing indicated that three hours after the Debtor was served with a subpoena for recent banquet books, the Debtor intentionally concealed or destroyed the 1994 book. In addition, the Bankruptcy Court found that the Debtor's testimony at this hearing was evasive and misleading at best. The Bankruptcy Court found that the management of the Debtor was untrustworthy and could not fulfil its fiduciary obligations. All of the Bankruptcy Court's factual conclusions were amply supported by the record before it. The evidence thus supported the requisite level of "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" that would have justified the appointment of a trustee under 11 U.S.C. 1104(a). *See In re Bibo,* 76 F.3d at 258 (finding that factors listed in section 1104(a) were indicative of appropriate reasons for the appointment of a trustee).

### CONCLUSION

For the reasons stated, the Bankruptcy Court's order appointing a Chapter 11 trustee is **AFFIRMED.**

**SO ORDERED.**