In re YARNELL'S ICE CREAM
COMPANY, INC., Debtor.

No. 4:11–BK–15542.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 19, 2012.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Yarnell's Ice Cream Company, Inc. (Debtor) filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code on August 29, 2011. On the same day, Ronald M. Cameron (Cameron) filed a motion for relief from the automatic stay and for abandonment of the property or, alternatively, for adequate protection based on his perfected first priority security interest in the Debtor's inventory, accounts, and some property. On September 20, 2011, Interamerican Quality Foods, Inc. (Interamerican) filed an objection to Cameron's motion alleging that Interamerican has a claim against the Debtor pursuant to the Perishable Agricultural Commodities Act (PACA) that entitles it to a claim superior to Cameron's lien. Interamerican stated that its claim should be satisfied before Cameron's claim pursuant to PACA, and, therefore, Cameron's motion should be denied. An agreed order was entered on September 27, 2011, granting Cameron's relief from the stay subject to the Trustee retaining $16,500.00 (the amount of Interamerican's claim) until it is determined whether Interamerican is a proper PACA trust claimant. Interamerican was directed to submit a motion for turnover within 30 days of the order.

On October 25, 2011, Interamerican filed a motion to abandon and turn over property that was being held by the Trustee in escrow. Cameron filed a response to Interamerican's motion on November 14, 2011, alleging that Interamerican is not a proper PACA claimant. Interamerican filed a reply to Cameron's response on November 28, 2011. A hearing was held on December 16, 2011. Both parties filed briefs in the matter.

The Court finds that this is a not a core proceeding pursuant to 28 U.S.C. § 157(b).[1] The Court has jurisdiction over

Kristen C. Wright, Bass, Berry & Sims, PLC, Memphis, TN, for Debtor.

---

1. For a bankruptcy court to have core jurisdiction over a proceeding, the proceeding must "arise under title 11" or "arise in a title

the pending matter as a non core proceeding pursuant to 28 U.S.C. § 157(c)(1).[2] Pursuant to 28 U.S.C. § 157(c)(2), parties may consent to the entry of a final judgment by a bankruptcy judge in a non-core case.[3] Neither party contested that this Court has subject matter jurisdiction nor did either party discuss the matter in their briefs. Cameron argued at trial, after the

Court sua sponte raised the issue of subject matter jurisdiction, that the parties agreed to the Court exercising its jurisdiction and pointed to the order of relief entered whereby the parties agreed to let the Court determine the validity of Interamerican's claim. (Def.'s Ex. 1., para. 28.) Interamerican did not argue with or object to Cameron's jurisdictional argument.[4]

11 case." 28 U.S.C. § 157(b)(1); *Schmidt v. Bank (In re Schmidt)*, 453 B.R. 346, 351 (8th Cir. BAP 2011)("in *Stern v. Marshall*, the United States Supreme Court rejected the notion that § 157 embodies a category of matters that are core, but do not arise under or arise in a bankruptcy.... That is so regardless of whether the matter can be fitted into one of the enumerated examples in § 157(b)(2)."). A proceeding "arises under" title 11 if the claim asserted is created by or based on a provision of the bankruptcy code; a proceeding "arises in" a case under title 11 if it is not based on any right expressly created by the bankruptcy code but has no existence outside of the bankruptcy case. See *C & B, LLC v. Grubbs Emergency Services, Inc. (In re Grubbs Construction Co.)*, 305 B.R. 476, 480 (Bankr.W.D.Ark.2003) (citations omitted). This dispute does not arise under or in a title 11 case. See *Cavendish Farms v. Ameriserve Food Distribution, Inc. (In re Ameriserve Food Distribution, Inc.)*, 2000 WL 33682393 (Bankr.D.Del.2000) ("PACA claims often arise in a bankruptcy setting, they by no means arise exclusively in bankruptcy"); *Rajala v. Guaranty Bank & Trust (In re United Fruit & Vegetable, Inc.)*, 191 B.R. 445 (Bankr.D.Kansas 1996).

**2.** Jurisdiction that is non core only must be "related to a case under title 11." 28 U.S.C. § 157(c)(1). A matter is "related to" a title 11 case if "the outcome ... could conceivably have any effect on the estate being administered in bankruptcy." *National Union Fire Ins. Co. of Pittsburgh v. Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd. Cir. 1984)); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir.1987). If Interamerican does not qualify as a PACA claimant, then it has an unsecured claim. It follows that this Court has related to jurisdiction because Interamerican's unsecured claim will affect the

distribution to the unsecured creditors thereby having an effect on the bankruptcy estate.

**3.** See *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2607, 180 L.Ed.2d 475 (2011)("[The allocation of] authority to enter final judgment between the bankruptcy court and the district court ... does not implicate questions of subject matter jurisdiction. See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case)"); see also *Badami v. Sears*, 461 B.R. 541, 547 (8th Cir. BAP 2012)("a bankruptcy judge may hear and determine a non-core proceeding with the consent of the parties").

**4.** A party may impliedly consent to final adjudication of certain matters by non-Article III bankruptcy judges. *Ardi Limited P'ship v. The Buncher Co. (In re River Entm't Co.)*, 2012 WL 1098570, at *12 (Bankr.W.D.Pa.2012) (citations omitted); *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1337(5th Cir.1995) (waiver may arise by implication, where a litigant fails to object to bankruptcy court's exercise of core jurisdiction before or during the relevant hearing); *Fed'n of Puerto Rican Org. of Brownsville, Inc. v. Howe*, 157 B.R. 206, 210–211 (E.D.N.Y.1993) (parties agreed to have bankruptcy judge sign the settlement agreement in a non-core dispute thereby implicitly consenting to the court's authority to enter a final order in the proceeding)(citing *In re G.S.F. Corp.*, 938 F.2d 1467, 1476–77 (1st Cir.1991) (by consenting to have bankruptcy court enter a final judgment parties consented to its jurisdiction to enter final order); *In re Rath Packing Co.*, 75 B.R. 137 (N.D.Iowa 1987) (failure to make timely motion implies consent to the characterization of proceeding as "core"), *aff'd*, 860 F.2d 1086 (8th Cir.1988); see also 28 U.S.C. § 157(c)(2) (parties may consent to jurisdiction of bankruptcy court to enter orders and judgment)).

Therefore, pursuant to the agreed order and the lack of any objection, the Court finds the parties consented to treatment of this proceeding as a core matter and the Court may enter a final judgment in this matter pursuant to 28 U.S.C. § 157(c)(2).

## I.

### FACTS

Interamerican sold a product, referred to in the invoices as "strawberry puree" or "stabilized strawberries," to the Debtor on credit. Gary Payne (Payne), president of Interamerican, in his affidavit admitted into evidence, stated that his company "provided fresh fruits and/or vegetables on credit to the Company" with no further explanation. A bill of lading was introduced from Millard Refrigeration to Interamerican, evidencing the strawberry puree or stabilized strawberries are shipped frozen.

Interamerican's invoices to the Debtor contain the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities until full payment is received.

The invoices have a term of net 30 days. According to Payne, the payment was due within ten days after the day on which the produce was accepted.[5] Interamerican's claim, consisting of unpaid invoices, is in the principal amount of $15,739.76.

Jeff Holtz, the Debtor's research and development director, signed an affidavit that was admitted into evidence stating that in his opinion the stabilizer changed the strawberries into a different character from fresh strawberries. He also stated that sugar was added to the formulations. Cameron did not dispute that Interamerican is a licensed PACA dealer or that Interamerican's license is valid.[6]

## II.

### ARGUMENT

Interamerican argues that it preserved its PACA trust claim because the language on the invoice would put a reasonable person on notice that it was making a PACA claim, and it is not necessary that the language of the statute appear on the notice verbatim. Interamerican also argues that Cameron "failed to satisfy his clear burden to prove any of the Debtor's assets are outside the scope of the floating non-segregated PACA trust." In addition, Interamerican argues that the puree retained its identity as a fresh agricultural product and is covered by PACA.

Cameron argues that the language on the invoice is not sufficient to provide notice of the PACA trust claim and therefore Interamerican failed to preserve a PACA trust. Furthermore, Cameron argues that the language used did not include accounts receivables so that Interamerican waived any interest in accounts receivables. Cameron also argues that Interamerican modified its strawberries so that they lost their identity as fresh agricultural produce and, therefore, they are not covered by PACA.

## III.

### DISCUSSION

■ PACA provides unpaid sellers of perishable agricultural commodities extra protections under the law by creating a

---

5. Neither party raised this discrepancy as an issue that needs to be addressed.

6. A licensee is "any firm who holds an unrevoked and valid unsuspended license under the act." 7 C.F.R. § 46.2(1).

statutory trust for the benefit of unpaid sellers. See *Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit and Produce Co.)*, 12 F.3d 806, 808–809 (8th Cir.1994). Previously, unpaid sellers were simply unsecured creditors; sellers protected by PACA are now elevated to a priority position above the secured creditors. In re *Lombardo Fruit and Produce Co.*, 12 F.3d 806, 808–809 (8th Cir.1994). Pursuant to PACA,

> all [p]erishable agricultural commodities ... and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers ... until full payment of the sums owing in connection with such transactions has been received....

7 U.S.C. § 499e(c)(2).

PACA contains several prerequisites that must be complied with in order to receive PACA trust protection; however, PACA leaves most of the procedural and substantive prerequisites to the Department of Agriculture's regulatory discretion. *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 781 (8th Cir.1991).

PACA requires that the unpaid supplier or seller must give written notice of their intent to preserve the PACA trust to the buyer, which can be done one of two ways. The seller can send the buyer and the Secretary of Agriculture a written notice of intent to preserve trust benefits within 30 days of the date payment is due on the transaction pursuant to 7 U.S.C. § 499e(c)(3) or the seller can provide notice by invoice statements pursuant to 7 U.S.C. § 499e(c)(4).

Interamerican utilized the invoice method found in subsection 4, which provides an alternative to subsection 3. Pursuant to subsection 4:

> a licensee may use ordinary and usual billing or invoice statements of the licensee's intent to preserve the trust. The bill or invoice statement must include ... on the face of the statement the following: 'The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.'

7 U.S.C. § 499e(c)(4).

Interamerican's invoice did not include all of the above language. The following contains the quoted language found in subsection 4 with the underlined language denoting the language left off of Interamerican's invoice:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, <u>all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities</u> until full payment is received.

The Eighth Circuit has not yet analyzed the notice method provided for in subsection 4; however, they have analyzed the notice provisions provided for in subsection 3 in *Hull Co. v. Hauser's Foods, Inc.* 924 F.2d 777 (8th Cir.1991). Subsection 4 was added as part of the 1995 amendments to PACA, and was not part of the act when

the Hull opinion was decided. See *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 206 (3rd Cir.1998). The parties argue over *Hull's* relevance in understanding how to read the requirements of subsection 4 and so it is necessary to discuss.

The relevant language regarding notice in 7 U.S.C. § 499e(c)(3) is as follows:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust.... The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust.

The regulations provided that, "[a]n appropriate notice of intent to preserve trust benefits must be in writing, must include the statement that it is notice of intent to preserve trust benefits...." 7 C.F.R. § 46.46(g)(iii)(3) (1990).[7] In *Hull,* the notice to the USDA failed to include an express statement that it constituted notice of intent to preserve trust benefits and the date the payment was due; however, there was an attached letter that stated the plaintiff was filing a notice of intent to claim trust benefits with the USDA. *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 783 (8th Cir.1991). While the notice of intent did not contain the regulation's required language, the court found that the letter was sufficient to indicate that the plaintiff wished to preserve their trust benefits. *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 783 (8th Cir.1991).

The Eighth Circuit reasoned that PACA was enacted "to provide a practical remedy to small farmers." *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 780 (8th Cir. 1991) (quoting *Chidsey v. Geurin,* 443 F.2d 584, 587 (6th Cir.1976)). See also *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 209 (3rd Cir.1998)("The primary purpose of the statute was to protect unpaid sellers vis-a-vis secured creditors, not to prefer certain unpaid sellers over others.") Therefore, "[r]equiring strict compliance with the regulation would thwart the remedial nature of the statute ... we should liberally construe it in favor of produce sellers." *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 783 (8th Cir.1991). The Hull court found that if "the debtor may derive the necessary information from the notice" then the seller qualifies for PACA protection pursuant to 7 U.S.C. § 499e(c)(3). *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 783 (8th Cir.1991). The Eighth Circuit stated that "substantial compliance with the notice provisions suffice to preserve trust benefits." *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 783 (8th Cir.1991).

## IV.

### ANALYSIS

Interamerican's argument that the *Hull* opinion adopted a substantial compliance standard of review for all of PACA which now applies to section 4 is not justified. Subsection 4 is distinguishable from subsection 3 in that the language of subsection 4 itself states the invoice "must" include and then the language that must be included is provided for in "quotes." The requirements that the seller failed to comply with in Hull were found in the regulations; they were not from the language of the statute itself. The language of subsection 3 requires "written notice of intent to preserve the benefits of the trust," which the sellers provided. It was the requirements found in the regulations regarding the content of the notice of intent that the Eighth Circuit held could be substantially com-

---

**7.** The 2005 amendments terminated this no-  tice requirement.

plied with. See *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc. (In re San Joaquin Food Service, Inc.)*, 958 F.2d 938, 940 (9th Cir.1992) (quoting *Debruyn Produce Co. v. Richmond Produce Co. (In re Richmond Produce Co.)*, 112 B.R. 364, 372 (Bankr.N.D.Cal.1990)) ("although the regulations must be considered, the court is not required to give this portion of the regulations the deference to which they would be entitled if they had been enacted pursuant to a statutory mandate.")

■ Interamerican failed to include subsection 4's required language, "all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities" in their notice. The language left off of the invoice changed the meaning of the notice. The plain language of the statute, 7 U.S.C. § 499e(c)(4), requires the notice to contain all of the quoted language in order to receive PACA protection and must be strictly complied with.

## V.

### CONCLUSION

Accordingly, this Court finds that Interamerican failed to comply with 7 U.S.C. § 499e(c)(4) and does not qualify for a PACA trust. Interamerican's motion to abandon and for turnover is denied. The Trustee is ordered to release the funds held in escrow to Cameron.

IT IS SO ORDERED.